1   ROGER CARTER, State Bar No. 140196
    THE CARTER LAW FIRM
2   2030 Main Street, Suite 1300
    Irvine, CA 92614
3   Telephone:    949.260.4737
    Facsimile:    949.260.4754

4

5   SCOTT B. COOPER, State Bar No. 174520
    THE COOPER LAW FIRM, P.C.
    2030 Main Street, Suite 1300
6   Irvine, CA 92614
    Telephone:    949.724.9200
7   Facsimile:    949.724.9255

8   JOSE GARAY, State Bar No. 200494
    JOSE GARAY, APLC
9   2030 Main Street, Suite 1300
    Irvine, CA 92614
10   Telephone:    949.260.9193
    Facsimile:    949.260.9194

11

12   Attorneys for Plaintiff BRITTANY KEENE,
    on behalf of herself and on behalf of all
13   others similarly situated.

14

15               UNITED STATES DISTRICT COURT

16           NORTHERN DISTRICT OF CALIFORNIA

17   BRITTANY KEENE, individually and on     CASE NO. 3:07-CV-05324 WHA
    behalf of all others similarly situated,

18            Plaintiff,           **NOTICE OF MOTION AND MOTION**
**FOR PRELIMINARY APPROVAL OF**
19   v.                    **CLASS ACTION SETTLEMENT;**
**MEMORANDUM OF POINTS AND**
20                          **AUTHORITIES IN SUPPORT THEREOF;**
    COLDWATER CREEK, INC., a Delaware   **EXHIBITS**
21   corporation and DOES 1 through 100,
    inclusive                     **[Declaration of Roger R. Carter and**
22                          **Proposed Order filed concurrently**
             Defendant.         **herewith]**
23

24                          Hearing:

25                          Date:        September 18, 2008
                         Time:        8:00 a.m.
26                          Courtroom: 9

27

28

1       PLEASE TAKE NOTICE that on September 18, 2008, at 8:00 a.m., or as soon thereafter as

2   the matter may be heard, in Courtroom 9 of the above-entitled Court, located at 450 Golden Gate

3   Avenue, San Francisco, California 94012, Plaintiff Brittany Keene ("Plaintiff") will and hereby does

4   move this Court for preliminary approval of the settlement of this class action.

5       Plaintiff will seek entry of an order that preliminarily approves the settlement, certifies the

6   plaintiff class for the purpose of settlement, directs that notice of the settlement be given to members

7   of the class and schedules a hearing for consideration of final approval of the settlement.  This

8   Motion is based upon this motion, the Memorandum of Points and Authorities in support of this

9   motion, the Stipulation of Settlement and other exhibits attached hereto, the declaration filed in

10  support of this motion, all other pleadings and records on file in this action, and the presentations of

11  counsel.  The basis for this motion is that the proposed settlement is fair, adequate, and reasonable

12  and in the best interests of the class as a whole, and that the procedures proposed by the parties are

13  adequate to ensure the opportunity of class members to participate in, opt out of, or object to the

14  settlement.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

## CASES

3

4   *Amchem Products, Inc. v. George Windsor, et al.*, 521 U.S. 591 (1997) ............................ 21

5   *Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ........................................ 12

6   *Brinker Restaurant Corp. v. Superior Court*, ___ Cal.Rptr. 3d __,
7   WL 2806613 (2008) ................................................................................................... 9

8   *Brown v. Federal Express Corp.*, 2008 U.S. Dist. LEXIS 17125 ........................................ 9

9   *Cartt v. Superior Court*, 50 Cal. App. 3rd 960 (1975) ....................................................... 17

10  *Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949 (2005) ........................................ 9

11  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ........................................ 7

12  *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ........................................................... 7

13  *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974) ....................................................... 17

14  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.S.N.Y. 2005) ........................................ 12

16  *Glass v. UBS Financial Services, Inc.*, 2007 WL 221862 (N.D. Cal. 2007) ........................ 15

17  *Hammon v. Barry*, 752 F. Supp. 1087 (D. D.C. 1990) ....................................................... 7

18  *Hanlon v. Chrysler Corp*, 150 F.3d 101 (9th Cir. 1996) ....................................... passim

19  *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ........................................ 19

20

21  *In re Chicken Anti-Trust Litigation*, 560 F. Supp. 957 (N.D. Ga. 1980) ...... ........................ 7

22  *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) .................. 13, 14

23  *In re Heritage Bond Litig.*, 2005 WL 1594403 (C.D. Cal. 2005) ................... ................. 15

24  *In re IKON Office Solutions*, 194 F.R.D. 166 (E.D. Pa. 2000) ........................................ 13, 14

25  *In re Michael Milken and Assoc. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993) ................ 12

26  *In re Omnivision Tech, Inc.*, ___ F. Supp. 2d __,
27  2008 WL 123936 (N.D. Cal. Jan. 9, 2008) ........................................................... 13, 14

28  *Kakani v. Oracle Corporation*, 2007 WL 1793774 (N.D. Cal. 2007) ........................ 15

*Kakani v. Oracle Corporation,* 2007 WL 222673 (N.D. Cal. 2007) .................................... 15

*Klay v. Humana, Inc.,* 382 F.3d 1241 (11th Cir. 2004)......................................................... 19

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.,*
834 F.2d 677 (7th Cir. 1987).................................................................................................7
.

*Molski v. Gleich,* 318 F.3d 937 (9th Cir. 2003).....................................................................6

*Morton v. Valley Farm Transport, Inc.,* 2007 WL 1113999 (N.D. Cal. April 13, 2007).....21

*National Rural Tele. Corp v. DIRECTV, Inc.,* 221 F.R.D. 523 (C.D. Cal. 2004)............7,13

*Newman v. Stein,*  464 F.2d 689 (2d Cir. 1972) ................................................................ 13

*Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615 (C.A. Cal. 1982)..................7,13

*Perez v. Safety-Kleen Systems, Inc.,* 2007 WL 1848037
(N.D. Cal. Jun. 27, 2007) .......................................................................................................9

*Pridd v. Eldelman,*  883 F.2d 438 (6th Cir. 1989)................................................................7

*Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301 (9th Cir. 1990) ................... 16

*Sommers v.  Abraham Lincoln Federal Savings & Loan Ass'n,*
79 F.R.D.571 (E.D. Pa. 1978) ................................................................................................7

*Steinberg v. Carey,*  470 F.Supp. 471 (D.N.Y. 1979) .........................................................7

*Van Vranken v. Atlantic Richfield Co.,* 901 F. Supp. 294 (N.D. Cal. 1995) ........................ 15

*Wang v. Chinese Daily News, Inc.,* 231 F.R.D. 602 (C.D. Cal. 2005) .................................. 20

*White v. Starbucks Corp.,* 497 F. Supp. 3d 1080 (N.D. Cal. 2007) ......................................9

*Williams v. MGM-Pathe Communiocations Co.,* 129 F.3d 1026 (9th Cir. 1997) ................. 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>TABLE OF AUTHORITIES (CONT'D)</u>**

**<u>RULES</u>**

Federal Rules of Civil Procedure, Rule 23 ................................................17, 19, 20

Federal Rules of Civil Procedure, Rule 30 ...........................................................11

Labor Code §201 ......................................................................................................2

Labor Code §202 ......................................................................................................2

Labor Code §203 ......................................................................................................2

Labor Code §218 ......................................................................................................2

Labor Code §221 ......................................................................................................2

Labor Code §226 ....................................................................................................12

Labor Code §227 ......................................................................................................2

Labor Code §351 ......................................................................................................2

Labor Code §510 ......................................................................................................2

Labor Code §512 ......................................................................................................2

Labor Code §1174 ....................................................................................................2

Labor Code §1194 ....................................................................................................2

Labor Code §1198 ....................................................................................................2

Labor Code §1199 ....................................................................................................2

IWC Wage Order 7-2001 .........................................................................................2

California Business & Professions Code §17200 .....................................................2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES (CONT'D)

## TREATISES

Manual for Complex Litigation 2d (1985) ............................................................. 6

Manual for Complex Litigation 3d ....................................................................... 6

2 Newberg on Class Actions 2nd (1985) ............................................................. 6

Newberg on Class Actions 3rd ......................................................................6,7

Newberg on Class Actions 4th (2002) ..........................................................6,18,21

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.

3

## INTRODUCTION

4      This is a "wage and hour" class action against defendant Coldwater Creek, Inc. ("Coldwater

5   Creek" or "Defendant") in which plaintiff Brittany Keene ("Plaintiff") alleges that Coldwater Creek

6   failed to provide meal and rest breaks and failed to pay wages due, all in violation of California labor

7   laws. Plaintiff, acting through her counsel of record, The Carter Law Firm, The Cooper Law Firm,

8   P.C., and Jose Garay, APLC ( "Plaintiff's Counsel"), and Defendant, acting through its counsel of

9   record, Morgan, Lewis & Bockius, LLP, have entered a separate and previously-filed Stipulation of

10  Class Action Settlement, which will dispose of this action in its entirety ("Proposed Settlement").[1]

11  The Proposed Settlement covers alleged claims of its current and former non-exempt employees in

12  California from September 6, 2003 until the preliminary approval by the Court (the "Class or

13  "Settlement Class").

14      This Application seeks approval of the Proposed Settlement. As discussed below, the

15  Proposed Settlement reached between Defendant and Plaintiff (the "Parties") is a fair, reasonable

16  and adequate resolution of the claims that are in Plaintiff's First Amended Complaint ("Class

17  Claims"). It is the product of arm's length bargaining in a mediation session with the experienced

18  mediator Michael Dickstein, Esq. and is in the best interests of the class. As a result, Plaintiff

19  respectfully requests that the Court grant the following:

20         • preliminary approval of the terms of the Proposed Settlement;

21         • approval of Rust Consulting, Inc. as Claims Administrator;

22         • approval of the Notice to the Settlement Class;

23         • approval of the Claim Form (to be provided with the Notice to members of the

24            Settlement Class);

25

26  [1]  The following documents are attached to this Motion: Stipulation of Class Action Settlement
    ("Settlement Agreement"), Exhibit A; [Proposed] Notice of Pendency of Class Action, Proposed

27  Settlement and Hearing Date for Court Approval ("Notice"), Exhibit B; [Proposed] Claim Form,
    Exhibit C; and [Proposed] Request for Exclusion From Class Action Settlement ("Opt Out Form"),

28  Exhibit D. With the exception of some relatively minor changes to the Notice and Claim Form,
    these documents are identical to those filed with the Court on June 23, 2008.

- 1 -

- approval of the Opt Out Form (to be provided with the Notice to members of the Settlement Class);

- provisional certification of the Settlement Class, for settlement purposes only;

- confirmation of Plaintiff's Counsel as counsel for the Class ("Class Counsel") and the designation of Plaintiff as the representative of the Class ("Class Representative"); and

- the scheduling of a final fairness hearing.

## II.

## FACTUAL BACKGROUND

### A.    Procedural Background

On September 6, 2007, Plaintiff filed this lawsuit as a proposed class action in Alameda County Superior Court on behalf of herself and all other current and former non-exempt employees similarly situated, seeking compensation for missed meal and rest periods, unpaid wages, and penalties associated with these alleged violations of the California Labor Code (including violations of California Labor Code Sections 201, 202, 203, 218, 218.6, 221, 227, 227.6, 351, 510, 512, 1174, 1194, 1198 & 1199, Industrial Welfare Commission Wage Order 7-2001, and Cal. Bus. & Prof. Code § 17200 *et. seq.*). Plaintiff claims on behalf of the Settlement Class that its members were required to work off the clock and without being provided meal and rest breaks, and, due to these violations, were not provided accurate itemized pay statements and were not paid all wages due to them upon termination. On August 8, 2008, Plaintiff filed a Stipulation to file a First Amended Complaint that included an additional claim under the California Private Attorneys' General Act of 2004 ("PAGA") based upon the above-described alleged violations of the Labor Code.

Following the removal of the case in October 2007, the Parties engaged in thorough formal and informal discovery, including depositions and written discovery and involving a discovery motion before this Court. On June 6, 2008, the Parties attended a mediation before Michael Dickstein, Esq., an independent mediator with extensive experience in wage and hour class actions. At the conclusion of the mediation, the Parties reached a settlement agreement and created a

///

1    Memorandum of Understanding setting forth the basic terms of the settlement. The Proposed

2    Settlement is the product of that mediation.

3    **B.    Terms and Provisions of the Proposed Settlement.**

4           The terms of the Proposed Settlement (more fully set forth in the executed Stipulation of

5    Class Action Settlement attached as Exhibit A), include the following:

6           •    A settlement fund in an amount up to nine hundred and fifty thousand dollars

7                ($950,000.00) (the "Maximum Settlement Consideration" or "MSC") to settle the

8                claims asserted in the First Amended Complaint on behalf of the Settlement Class and

9                the Settlement Class Counsel. (Exhibit A, ¶ 6.1.)

10          •    Payments to members of the Settlement Class who submit valid and timely Claim

11               Forms. These payments will be made out of the "Net Settlement Consideration" or

12               "NSC," which is equal to the MSC minus the $30,000 PAGA penalty payment[2], the

13               Class Representative's service payment, administrative expenses not to exceed

14               $50,000, Class Counsel's attorney's fees not to exceed $285,000, and Class Counsel's

15               reasonable litigation costs, not to exceed $15,000. (*Id.* at ¶¶ 1.20 and 6.3.) This Net

16               Settlement Consideration will be shared by the Settlement Class on a claims-made

17               basis as follows:

18                    Each Participating Claimant shall receive a Settlement Payment, which is a

19                    share of the Net Settlement Consideration based on the number of

20                    Compensable Shifts worked by the Participating Claimant during the Class

21                    Period. The Settlement Payment for each individual Participating Claimant

22                    shall be calculated by dividing the Net Settlement Consideration by the total

23                    number of Compensable Shifts worked by all Class Members during the Class

24                    Period, and then multiplying that number by the total number of Compensable

25

26    ---

        [2] Pursuant to the express requirements of Labor Code Section 2699(i), the PAGA payment
27    shall be allocated as follows: $22,500 (75%) to the California Labor & Workforce Development
      Agency ("LWDA") for the enforcement of labor laws and education of employers, and $7,500
28    (25%) to the Participating Claimants on a pro rata basis. (Exhibit A, ¶ 6.2.) The PAGA Penalty
      Payments to Participating Claimants are not wages.

Shifts worked by the individual Class Member. By way of example only, if the total number of Compensable Shifts worked by all Class Members combined is 400,000 and if the Net Settlement Consideration is $600,000, and if the individual Participating Claimant worked 260 Compensable Shifts (i.e., an employee working 5 days per week for approximately one year), then the Participating Claimant in this example would receive: $390.00 (i.e., $600,000 divided by 400,000 = $1.50, multiplied by 260), which would be in addition to his or her share of the PAGA penalty payment. (*Id.* at ¶ 6.3.)

- Regardless of the number of claims made, Coldwater Creek is required to pay out at least 50% of the Net Settlement Consideration.[3] In the event that the claims made total less than 50% of the Net Settlement Consideration, the Settlement Payments shall be adjusted upward so that the total is equal to fifty percent (50%) of the Net Settlement Consideration. In that case, the Settlement Payment for each Participating Claimant shall be increased to include a pro rata share of the difference between the Net Settlement Consideration and the total of Settlement Payments, based on the number of Shifts worked by each Participating Claimant during the Class Period. (*Id.* at ¶ 6.7.)

- Coldwater Creek agrees not to object to the conditional certification of the Settlement Class for settlement purposes. (*Id.* at ¶ 5.1.)

- The Class Period will close on the date the Court grants preliminary approval of the Proposed Settlement. (*Id.* at ¶ 1.6.)

- A 10% cap on putative members of the Settlement Class ("Class Members") seeking to be excluded from the litigation. If more than 10% of all Class Members "opt-out" of the litigation, Coldwater Creek has the right to terminate the Proposed Settlement. (*Id.* at ¶ 9.4(F).)

---

[3] If the settlement administration costs were to exceed $50,000, any amount over $50,000 would be applied to this 50% minimum. (Exhibit A, ¶ 8.1.) Based on the estimate provided by Rust Consulting, the Parties do not expect the administration costs to exceed $50,000.

- The payment from the MSC, subject to Court approval, of a service payment of $7,500 to Plaintiff, Brittany Keene, as Class Representative. (*Id.* at ¶ 6.4.)
- Application by the Class Counsel for an award of attorneys' fees not to exceed $285,000 (30% of the MSC) from the MSC, plus reimbursement of all reasonable litigation expenses not to exceed $15,000. (*Id.* at ¶ 7.1.)
- Payment of reasonable administrative costs (estimated to be less than $50,000) associated with providing notice to the Class (to advise them of the pendency of the litigation, the Proposed Settlement, Class Members' right to object to the Proposed Settlement and how to participate in the settlement) out of the MSC. (*Id.* at ¶ 8.1.)
- The appointment of Rust Consulting, Inc. as Claims Administrator for this case. (*Id.* at ¶ 1.3.)
- In addition, the Parties agree that Coldwater Creek will pay the amount of $30,000 for the Private Attorneys General Act (the "PAGA") claims, and Plaintiff has agreed to file an amended complaint to add a claim under PAGA, to which Coldwater Creek has stipulated.[4] This amount will be deducted from the MSC. (*Id.* at ¶ 6.2.)

### III.

### THE PRELIMINARY APPROVAL PROCESS

Cases brought as class actions may only be settled, compromised or dismissed with court approval. Fed. R. Civ. Proc. 23(e). Approval of a class action settlement involves a two-step process. First, counsel for the parties submit the proposed terms of settlement, and the court makes a preliminary fairness evaluation. At this stage, the court examines the terms for overall fairness, and in so doing balances the following factors:

- The strength of the plaintiff's case;
- The risk, expense, complexity and likely duration of further litigation;
- The risk of maintaining class action status throughout the trial;
- The amount offered in settlement;

---

[4] The Parties have previously filed a Stipulation to Amend Complaint along with a First Amended Complaint adding a claim and prayer for relief under PAGA.

- The extent of discovery completed;

- The stage of the proceedings;

- The experience and views of counsel;

- The presence of a governmental participant; and

- The reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1996); *Molski v. Gleich*, 318 F.3d 937, 956 (9th Cir. 2003).

Second, if the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, the court should direct that notice be given to class members of a final fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement. Newberg on Class Actions (4th ed. 2002) § 11.25; Manual for Complex Litigation (3d ed.) § 30.41.

In reviewing a request for preliminary approval of a class action settlement, this Court is not charged with conducting a detailed analysis of the proposed settlement. Rather, its task is to determine whether the proposed settlement is within the "range of reasonableness," and whether it is appropriate to notify the class of the terms of the settlement and schedule a formal fairness hearing. 2 Newberg on Class Actions 2d (1985) § 11.25. According to the Manual for Complex Litigation:

> If the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the Class Members of a Formal Fairness Hearing, at which evidence may be presented in support of and in opposition to the settlement.

Manual for Complex Litigation, 2d, § 30.44 (1985).

A trial court may make a range of findings which support preliminary approval of a class settlement. As Professor Newberg comments:

///

///

///

> The strength of the findings made by a judge at a preliminary hearing
> or conference concerning a tentative settlement proposal may vary.
> The court may find that the settlement proposal contains some merit, is
> within the range of reasonableness required for a settlement offer, or is
> presumptively valid subject only to any objections that may be raised
> at a final hearing.

Newberg on Class Actions, 3d, Ed., § 11.26.

## IV.

## THE PRESUMPTION OF FAIRNESS

The law requires court approval of class action settlements in order to protect the interests of class members from self-interest on the part of class representatives or counsel, or from possible collusion between the parties. In making the preliminary fairness evaluation, a court should be mindful of the "strong presumption" that an agreed-upon settlement is fair. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Further, in approving a settlement,

> [t]he court need not "reach any ultimate conclusions on the contested
> issues of fact and law which underlie the merits of the dispute, for it is
> the very uncertainty of outcome in litigation and avoidance of wasteful
> and expensive litigation that induce consensual settlements."

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

When there is no evidence of fraud or collusion, courts presume that no such improprieties tainted the negotiations, and that they were conducted in good faith. Newberg, supra, § 11.51; *In re Chicken Anti-Trust Litigation*, 560 F. Supp. 957, 962 (N.D. Ga. 1980); *Pridd v. Edelman*, 883 F. 2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677, 681 (7th Cir. 1987). Courts are not to second-guess the parties, or substitute their judgment for that of the proponents of the settlement, particularly when the settlement has been reached by experienced counsel familiar with the litigation. *Hammon v. Barry*, 752 F. Supp. 1087 (D. D.C. 1990); *Steinberg v. Carey*, 470 F. Supp. 471 (D. N.Y. 1979); *Sommers v. Abraham Lincoln Federal Savings & Loan Ass'n*, 79 F.R.D. 571 (E.D. Pa. 1978).

**V.**

## THE PROPOSED SETTLEMENT MEETS THE STANDARDS
## FOR PRELIMINARY APPROVAL

As explained more fully below, the Proposed Settlement before the Court in the present dispute meets the criteria and merits preliminary approval due to the following: it was reached through arm's length negotiation and bargaining; it involved mediation before a respected and experienced mediator; the investigation and discovery in the case were sufficient to allow counsel and the Court to act intelligently; and Class Counsel is experienced in similar litigation as well as in complex matters. It is also fair, reasonable and adequate given the inherent risks of litigation, the risks regarding class certification and the expense and time consumed by litigation.

**A.    The Settlement is the Result of Serious, Informed, Noncollusive Negotiations.**

The Proposed Settlement presented to the Court for preliminary approval is the result of months of back and forth discovery and negotiations between Plaintiff, Defendant and their counsel, which culminated in a private mediation session. (*See* Declaration of Roger R. Carter filed herewith ("Carter Decl."), ¶¶ 7, 8 & 9.)

The Parties have vigorously debated the proper application of the law and the uncertainties posed by unsettled questions at-issue in this litigation, such as the proper weight to be accorded Defendant's policies and procedures for its retail operations, and the accuracy of the facts unearthed by Plaintiff's and Defendant's counsel both before and after the filing of the litigation. (Carter Decl., ¶ 9.) Each side has strongly advocated their positions concerning the claims and defenses at issue. (*Id.*) Each side also recognizes that the expense, delay, and uncertainty of the result after trial and appeal present the danger that an ultimate victory by either side may be of less value than the Proposed Settlement. Counsel for Plaintiff and Defendant submit that the Proposed Settlement is in the best interests of all parties.

The Parties have used the services of the Michael Dickstein, Esq. His broad experience mediating wage and hour class actions contributed greatly to the settlement discussions. (Carter Decl., ¶ 8.)

1    **B.    The Settlement is Fair Considering the Strength and Risks Involved.**

2         When considering the fairness of settlement, courts consider the strength of a plaintiff's case

3    as well as the risk, expense, complexity and likely duration of further litigation.  See *Hanlon v.*

4    *Chrysler Corp.*, 150 F.3d at 1026.  The Parties acknowledge that the facts of this case are disputed.

5    Plaintiff contends that Coldwater Creek is liable for failing to provide meal and rest breaks to its

6    non-exempt employees and requiring those employees to work off the clock.  Coldwater Creek

7    denies all liability for such claims, and maintains that it provided proper meal and rest breaks to all

8    non-exempt employees, and did not require any off-the-clock work.

9         Coldwater Creek further argues that these issues present individualized questions, making

10   class certification of these claims difficult.  Coldwater Creek would undoubtedly point to recent

11   federal cases, including at least one from this District, holding that meal periods need only be made

12   available, and not necessarily "ensured."  See *White v. Starbucks Corp.,* 497 F. Supp. 3d 1080, 1087

13   (N.D. Cal. 2007); *Brown v. Federal Express Corp.*, 2008 U.S. Dist. LEXIS 17125; *but see Perez v.*

14   *Safety-Kleen Systems, Inc.*, 2007 WL 1848037 (N.D. Cal., Jun. 27, 2007).  Under those cases, no

15   recovery would be due for missed meal and rest periods that were "provided" but not taken.  This

16   could present a significant barrier to class certification in meal and rest period cases.  The most

17   recent California appellate case on the issue denied class certification of a meal and rest period case

18   (and an off-the-clock claim) based on similar reasoning.  See *Brinker Restaurant Corp. v. Superior*

19   *Court,* ___ Cal. Rptr. 3d ___, 2008 WL 2806613 (2008); *but see Cicairos v. Summit Logistics, Inc.*,

20   133 Cal. App. 4th 949 (2005).  While Plaintiff's counsel strongly believes this is not the law and that

21   other California appellate courts, and ultimately the California Supreme Court, will reject this

22   analysis, it is an open issue as of now that must be taken into account when evaluating these claims.

23        In the face of these uncertainties, Class Counsel believes that the agreed-upon settlement

24   fairly compensates the Settlement Class members for wages and penalties allegedly owed.  (Carter

25   Decl., ¶¶ 9, 12, 13.)  Coldwater Creek feels strongly that it has limited, if any, potential liability in

26   this case, but when considering the hazards of litigation, agrees that the settlement is fair.  As this

27   Court is undoubtedly aware, the uncertainty of the outcome of a class certification motion and

28

1   ultimate adjudication of the facts (if there is one) here places both parties in a position of significant

2   risk.

3       The parties are also informed by an awareness of the extreme expenditures in time and

4   money required to litigate to conclusion issues regarding the application of California's wage and

5   hour laws to hourly employees (many of them part-time), and by the divergent views regarding class

6   treatment of such claims. In a case of this size, post-trial and appellate proceedings are likely to

7   occur, which will surely drag the case further into the future. When facing a distant and unsure

8   resolution of the allegations in this action, the swift, sure and substantial settlement is all the more

9   reasonable.

10  **C.    Sufficient Discovery and Investigation Has Occurred to Assess the Fairness of the**

11  **Settlement.**

12      Another factor considered for purposes of approving a settlement is the extent of discovery

13  completed. See *Hanlon*, 150 F.3d at 1026. The Parties have vigorously litigated this case since its

14  inception. In that time, the Parties have conducted thorough discovery and investigation into the

15  allegations contained within the Complaint. Over the course of the litigation, the Parties have

16  obtained an abundance of information through to assist them in properly analyzing their respective

17  positions.

18      Both sides have had ample opportunity to investigate the veracity and scope of the class

19  claims. Plaintiff's Counsel has reviewed documents relating to Defendant's policies and procedures,

20  job descriptions and other corporate policies and procedures relevant to the issues herein. Coldwater

21  Creek responded to the Requests for Production of Documents and Special Interrogatories and

22  produced documents, including time keeping "punch data" and payroll records for the Plaintiff.

23  Pursuant to the Court's February 28, 2008 Order, Coldwater Creek also provided complete time

24  records for a random sample of current and former employees, which encompassed over 500 pages

25  of detailed punch data. Plaintiff's counsel performed numerous statistical analyses of this data to

26  determine a meal period violation rate. (Carter Decl., ¶ 6.)

27      Coldwater Creek also produced all of the documents that exist relating to its applicable meal

28  and rest period policies and procedures. Plaintiff's Counsel took the deposition of Coldwater Creek

1   pursuant to Federal Rules of Civil Procedure 30(b)(6) on a number of topics relating to the claims in

2   the Complaint, and Coldwater Creek took the deposition of the Class Representative.  Plaintiff and

3   her counsel also interviewed putative class members of Coldwater Creek about the facts alleged in

4   the Lawsuit.  (*Id.*)  Counsel for the defense also had the opportunity to perform the same

5   investigations, interviews and analysis.

6        Accordingly, sufficient investigation and discovery has been conducted for the Parties to be

7   well-informed of the nature and the extent of the Class Claims, and to enable both sides to fully

8   evaluate the settlement proposal for adequacy, fairness and reasonableness.

9   **D.    The Settlement Has Achieved a Fair Result for the Class Members.**

10       1.    The Settlement Amount is Fair.

11       Another factor is the amount offered in settlement.  See *Hanlon*, 150 F.3d at 1026.  The class

12  of employees making claims in this litigation consists of approximately 2,800 hourly employees

13  employed at Defendant's California retail locations.  The Parties agree that the relevant period for

14  determining potential liability begins September 6, 2003, which was four years prior to the filing of

15  the Complaint.

16       The MSC provides for a fund of $950,000 toward the Class Claims, the claims

17  administration, the PAGA Penalty payment, claims for attorneys' fees and costs and the request for

18  an enhanced award to the Class Representative.  If the requested fees and costs are subtracted, there

19  will be approximately $562,500 remaining for payments to the Settlement Class.  These are real and

20  substantial payments as opposed to the largely speculative awards that may or may not be otherwise

21  obtained based on the various hazards of litigation should the Proposed Settlement not be approved.

22       Further, the potential damages in this case are much less than, for example, a

23  misclassification wage and hour class action, in which the plaintiff alleges that certain categories of

24  employees are misclassified as exempt from overtime pay.  In a misclassification case, all employees

25  in a particular job title or classification suffered harm.  Here, an analysis of the time records

26  indicates meal period violations occurred in a relatively small percentage the shifts, which

27  significantly lowers the potential damages in the event this case were tried.  (Carter Decl., ¶ 9.)

28

1    For example, for shifts of over six hours (those in which meal periods cannot be waived),

2  Plaintiff's analysis of the time records showed a potential maximum violation rate of 12.2%. Based

3  on the total number of shifts worked by the class members and their average hourly rate of pay

4  ($12.77), these violations yield potential damages under Labor Code Section 226.7 of approximately

5  $645,000. The defense analysis showed a potential violation rate of only 6.5% for these shifts,

6  which would come to approximately $344,000 in meal period damages. If 5-6 hour shifts are

7  included, the potential violation rate (as calculated by plaintiff) is closer to 20%, which would yield

8  a total meal period damage number of just over $1 million. With respect to rest periods, the

9  damages are much more difficult to estimate because there are no time records (employees do not

10  clock out for rest periods), but assuming the same potential violation rate as meal periods, those

11  numbers would simply double. Finally, with respect to the "off-the-clock" claim, assuming each

12  employee worked off the clock an average of 15 minutes every week, the total potential damages

13  would be approximately $265,000.

14    Thus, using Plaintiff's analysis, the total potential damages for these claims (excluding

15  interest) would be between approximately $1,556,000 and $2,265,000. The gross settlement is

16  approximately 42% of the larger amount (61% of the smaller), and the Net Settlement

17  Consideration payable to the Class is approximately 25% of the larger amount (36% of the

18  smaller). These figures are very reasonable in light of the risks involved in this case. As this Court

19  and other courts in the Ninth Circuit have observed, "simply because a settlement may amount to

20  only a fraction of the potential recovery does not in itself render it unfair or inadequate.

21  Compromise is the very nature of settlement." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D.

22  Cal. 1979). In this case, Plaintiff considers the settlement to be significantly more than a

23  "fraction," particularly considering the various potential complications, dangers and pitfalls that

24  proceeding would entail.

25    Indeed, "[t]he determination whether a settlement is reasonable does not involve the use of a

26  'mathematical equation yielding a particularized sum.'" *Frank* v. *Eastman Kodak Co.*, 228 F.R.D.

27  174, 186 (W.D.N.Y. 2005), *quoting In re Michael Milken and Assoc. Sec. Litig.*, 150 F.R.D. 57, 66

28  (S.D.N.Y. 1993). Courts recognize that there is an inherent "range of reasonableness" in

1    determining whether to approve settlement "which recognizes the uncertainties of law and fact in

2    any particular case and the concomitant risks and costs necessarily inherent in taking any litigation

3    to completion." *Id.* at 188, *quoting Newman v. Stein*, 464 F. 2d 689, 693 (2d Cir.), cert denied, 409

4    U.S. 1039 (1972).

5         District courts recognize that the reasonableness of a settlement is not dependent upon it

6    approaching the potential recovery plaintiff's might receive if successful at trial. *See In re*

7    *Omnivision Tech., Inc.*, ___ F. Supp. 2d ___, 2008 WL 123936 (N.D. Cal. Jan. 9, 2008); *see also*

8    *Nat'l Rural Telecomm. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled

9    law that a proposed settlement may be acceptable even though it amounts to only a fraction of the

10   potential recovery"); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y.

11   2004) ("settlement amount's ratio to the maximum potential recovery need not be the sole, or even

12   dominant, consideration when assessing settlement's fairness"); *In re IKON Office Solutions, Inc.*

13   *Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a

14   relatively small percentage of the most optimistic estimate does not, in itself, weigh against the

15   settlement; rather the percentage should be considered in light of strength of the claims"); *Officers*

16   *for Justice v. Civil Serv. Comm.*, 688 F. 2d 615, 628 (C.A. Cal. 1982) (it is "the complete package,

17   taken as a whole rather than the individual component parts, that must be examined for overall

18   fairness").

19        For example, in *Omnivision*, the plaintiffs' expert estimated damages totaling over $151.8

20   million through trial. *Omnivision*, 2008 WL 123936 at *5. The *Omnivison* court approved

21   settlement of $13.75 million "which is just over 9% of the maximum potential recovery asserted by

22   either party." *Id.* The damages allocated solely to the claimants, after accounting for attorneys' fees

23   and costs, was just over 6%. *Id.* The court reasoned that while the settlement amount "may seem

24   small compared to the potential maximum, that alone is not sufficient to reject the settlement." *Id.*

25   In so holding, the court acknowledged that plaintiffs limited their risk of continuing litigation by

26   accepting the settlement: "Plaintiff's here have agreed to accept a smaller **certain award** rather than

27   seek the full recovery and risk getting nothing." *Id.* (emphasis added).

28

1    The plaintiff's decision to reap a certain award in *Omnivision* is similar to the case at bar.

2    Based on the numerous risks detailed above in continuing with litigation, Plaintiff in the current

3    action chose to receive a certain award.  In fact, the actual potential payouts to the claimants herein

4    equals somewhere between 25% and 36% of the average estimated meal period, rest period, and

5    off-the-clock claims if this matter were successful at trial.  This amount is fair and reasonable.  *See,*

6    *e.g., Omnivision*, 2008 WL 123936 at *5; *IKON Office Solutions,* 194 F.R.D. at 183-84 (the court

7    approved settlement totaling $116 million although plaintiffs estimated the their claims to be worth

8    more than $1 billion dollars or about 11.6% of the requested amount for damages); *Global*

9    *Crossing,* 225 F.R.D. at 460 (although the plaintiffs claimed "tens of billions" in damages, the

10   court approved partial settlement of $325 million, far below the estimate purported by the

11   plaintiffs).

12       2.    The Settlement Payment Method is Fair to All Class Members.

13       Each participating Settlement Class member will be awarded compensation using a formula

14   based on the number of shifts worked compared to shifts worked by other Settlement Class

15   members.  The Class Members will receive a minimum payout of one-half of the Net Settlement

16   Consideration, and the actual payout to Class Members could easily exceed $500,000.  All Class

17   Members will enjoy equivalent benefits; none are singled out for special treatment.  While individual

18   monetary recoveries will vary, that difference will be dictated only by the number of shifts worked

19   by each class member.  The Parties have gone through great lengths to target the settlement amounts

20   to the right persons.

21       Payment to the putative class members on a "claims made" basis is the most fair and

22   equitable method of resolving the claims in this case.  First, unlike a typical "claims made"

23   settlement, the parties have agreed to a "floor" or minimum payment that the Settlement Class will

24   receive.  This is not a case where Defendant will keep the majority of the settlement funds if few

25   class members submit claim forms.  Defendant is *required* to pay the class at least fifty percent of

26   the Net Settlement Consideration, in addition to each participating Class Member's PAGA payment.

27   If less than the required number of Class Members elects to file claims forms, the amount for each

28   class member will be increased *pro rata* so that this minimum floor is met.  (Exhibit A, ¶ 6.7.)

- 14 -

The Parties have also attempted to avoid any potential unfairness by making sure that all putative class members will receive appropriate notice. The Parties have every reason to believe that the class address database maintained by Defendant is current and reliable. The Parties' Settlement Agreement provides that all Settlement Class members who are current employees will receive notice at work, where they will be mostly likely to receive and read it. (*Id.*, ¶ 9.2(4).) The Parties' Agreement also provides for the Claims Administrator to perform all necessary searches to locate a class member's address if the address in Defendant's databases is no longer accurate. (Exhibit A, ¶ 9.2.) The Parties are thus confident that they will reach the largest group of Class Members possible.

Unlike this Court's June 19, 2007 decision in *Kakani v. Oracle Corporation*, 2007 WL 1793774, this is not a "collusive" settlement. This case involves a much smaller, narrowly defined California class who will be given adequate notice. The Parties' provision for a pro rata increase in the amount paid to Class Members should an unusually small number "opt in" ensures the class will receive a fair and appropriate amount. This particular Settlement Agreement is much closer to the "claims made" agreement subsequently approved by this Court in *Kakani* (August 2, 2007 Order Granting Motion for Preliminary Approval, 2007 WL 2221073), and the Parties request that the Court likewise approve this settlement.

3.    Plaintiff's Service Payment is Appropriate.

The $7,500 service payment to Plaintiff Brittany Keene is fair and not the result of improper self-interest. Federal courts in California frequently award enhancement payments to lead plaintiffs for their efforts in prosecuting the case. *See, e.g., Glass v. UBS Financial Services, Inc.*, 2007 WL 221862, *16 (N.D. Cal. 2007) (Chesney, J.) (approving payments of $25,000 to each named plaintiff); *see also In re Heritage Bond Litigation*, 2005 WL 1594403, *18 (C.D. Cal. 2005) (Tevrizian, J.) (awarding incentive payments of between $5,000 and $18,000); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (Williams, J.) (awarding $50,000 to a lead plaintiff). Courts have thus recognized that the important statutory goals of state wage/hour statutes will best be served if individuals are given reasonable incentives to step forward and represent their co-workers.

1    In this context, a payment to Plaintiff of $7,500 out of a total $950,000 settlement is both

2    small and reasonable.  Ms. Keene served as a liaison between the Class members and Plaintiff's

3    counsel.  She further assisted Plaintiff's Counsel with investigation of the class claims by, among

4    other things, participating in numerous meetings and telephone conferences to discuss Defendant's

5    policies and practices and her experiences as an employee.  She also responded to formal discovery,

6    which involved reviewing and making edits to written discovery responses and locating and

7    producing documents responsive to Defendant's requests.  In addition, she prepared for and sat

8    through a full deposition, during which she was subjected to searching cross-examination.  (Carter

9    Decl., ¶ 18.)  Finally, unlike the other class members, Plaintiff has agreed to a full release of any and

10   all claims she has or may have had against Defendant.  The service payment is, in part, consideration

11   for her additional, more far-reaching release of claims and therefore appropriate under the

12   circumstances.

13       4.    <u>The Requested Fees are Appropriate, and Class Counsel Will Submit Detailed</u>

14             <u>Support for the Fee Request Prior to Final Approval.</u>

15   Along with the Motion for Final Approval, Class Counsel will submit a detailed application

16   for fees that will include complete time records and hourly rates.  Class Counsel will request a fee

17   not to exceed $285,000, or 30% of the Maximum Settlement Consideration.  The fee requested will

18   be justified not only as a percentage of the maximum settlement value (*see Williams v. MGM-Pathe*

19   *Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (attorney fee award of 33.3% based on

20   maximum settlement value in a claims-made settlement)) but also by the "lodestar/multiplier"

21   method based on the amount of attorney time spent and the complexities and risk associated with the

22   case.  *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

23   **E.    Both Federal And State Officials Will Be Provided With The Opportunity To Review**

24   **And Consult Regarding The Settlement.**

25   Another factor is the presence of a governmental participant.  See *Hanlon*, 150 F.3d at 1026.

26   Given that defendant is paying a PAGA penalty, the Parties are required to notify responsible state

27   officials to provide them with the opportunity to intervene.  Pursuant to the PAGA statutory

28   requirements, Plaintiff notified the California Labor & Workforce Development Agency ("LWDA")

1   of her intent to allege PAGA claims in this case. The LWDA declined to investigate the claims but

2   has asked that they be advised of the results of the litigation. (Carter Decl., ¶ 10.)

3           Further, because this case was removed under the Class Action Fairness Act, Coldwater

4   Creek will be required to provide notice of the Proposed Settlement and its terms to the United

5   States Attorney General, the California Attorney General's Office, the California Department of

6   Labor Standards Enforcement, and the Attorney General Offices of each state where any Class

7   Member resides. 28 U.S.C. § 1715. If these entities have any concerns with the Proposed

8   Settlement, the Court will be apprised of those concerns prior to the final fairness hearing.

9   **F.    Class Counsel Have The Requisite Experience.**

10          Another factor considered in determining the fairness of a settlement is the experience and

11  views of counsel. *Hanlon*, 150 F.3d at 1026. Class counsel, Jose Garay, APLC, The Carter Law

12  Firm, and The Cooper Law Firm, have collectively practiced law in for 40 years. Plaintiff's counsel

13  has cumulatively personally handled more than 30 class actions to conclusion. (Carter Decl., ¶ 13.)

14  Based on this combined experience, Counsel strongly beleive that the settlement is fair and

15  appropriate given all factors involved.

16  **G.    The Degree of Opposition to the Proposed Settlement.**

17          Another factor when considering fairness is the reaction of the class members. See *Hanlon*,

18  150 F.3d at 1026. Once all Class Members have received notice of the terms of the Proposed

19  Settlement, the Court will be able to consider the reaction of the Class at the final fairness hearing.

20  Due to the fairness and adequacy of the Proposed Settlement, the Parties do not anticipate any

21  opposition.

**VI.**

**METHOD FOR NOTICE TO CLASS**

24          Due process and judicial interpretation of the notice provisions of the Federal Rules of Civil

25  Procedure, Rule 23(c), require that notice be provided to class members by the best reasonable

26  method available. *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732

27  (1974); *Cartt v. Superior Court*, 50 Cal. App. 3d 960, 124 Cal. Rptr. 376 (1975).

28  ///

1       When the named parties of a class action reach a proposed settlement, class members must be

2  notified of the terms of the proposed settlement so that they have an opportunity to consider the

3  terms of the settlement. Newberg on Class Actions (4th ed. 2002) § 11.30. Notice of a proposed

4  settlement must inform class members (1) of the nature of the pending litigation; (2) of the

5  settlement's general terms; (3) that complete information is available from court files; and (4) that

6  any class member may appear and be heard at the final fairness hearing. *Id.* at § 11.53.

7       To assess the adequacy of the proposed notice, the Court must consider both the notice's

8  mode of dissemination and its content. Newberg on Class Actions (4th ed. 2002) § 11.53. The

9  nature and extent of class notice of a proposed settlement are left to the discretion of the trial court

10  judge. *Id.*

11      Notice is designed to be only a summary of the litigation and the settlement and need not be

12  unduly specific. Newberg on Class Actions (4th ed. 2002) § 11.53. In this case, the proposed Class

13  Notice provides a description of the litigation, a description of the settlement, instructions for

14  participating in the settlement (or, in the alternative, avoiding participation), instructions for

15  objecting to the settlement, details on the final settlement approval hearing, contact information for

16  class counsel, and instructions for obtaining court records. (*See* Notice, attached as Ex. B.)

17      The proposed mode of dissemination of the Class Notice is also adequate. Coldwater Creek

18  has agreed to pay out of the MSC a third-party claims administrator, Rust Consulting, to send the

19  Notice, Claim Form, and Opt Out Form by first class mail to the last known address of each Class

20  Member. Current employees will receive the notice at work. Such notice is the best notice

21  practicable under the circumstances of this action. The names and last known addresses of virtually

22  all Class Members can be identified through a careful search of Coldwater Creek's employment

23  records.

24      Prior to mailing the Class Notice to each Class Member, the Claims Administrator will

25  ascertain the current accuracy of the last known address for each Class Member. (Exhibit A, ¶ 9.2.)

26  The Administrator will run the Class list through the United States Postal Service's National Change

27  of Address database and, if necessary, will perform address searches using public and proprietary

28  electronic resources that collect data from sources such as utility records, property tax records, motor

1   vehicle records (where permitted), and credit bureaus.  Further, Class Members still employed by

2   Coldwater Creek will receive workplace notice via e-mail, if applicable, or conventional mail at their

3   work addresses.  (*Id.*)  For each mailing that is returned as undeliverable, the Claims Administrator

4   will complete a standard skip trace in an effort to ascertain the current address of the particular Class

5   Member in question and, if such address is ascertained, the Claims Administrator will re-send the

6   Notice.  (*Id.* at ¶ 9.3.)

7           The notice and settlement procedures are reasonable to ensure that class members are notified

8   of the settlement and of their rights under the settlement and that they are paid appropriately under

9   the terms of the Settlement Agreement.

10                                                   **VII.**

11                          **CERTIFICATION OF THE CLASS ACTION**

12                      **FOR PURPOSE OF SETTLEMENT IS PROPER**

13          A class action may be certified under the Federal Rule of Civil Procedure if all four

14  prerequisites under Rule 23(a) are established and at least one subsection under Rule 23(b) is met.

15  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004).  The proposed Settlement Class meets

16  these requirements.

17          Rule 23(a) requires numerosity, typicality of the class representatives' claims, adequacy of

18  representation, and commonality (predominance of common issues).  Fed. R. Civ. P. 23(a); *see also*

19  *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1019 (9th Cir. 1998).  First, with respect to numerosity,

20  the Settlement Class is comprised of approximately 2,800 individuals and is therefore numerous

21  enough that joinder of all Settlement Class members is impracticable.

22          Second, Plaintiff's claims are typical of the Settlement Class.  The typicality standard is

23  "whether other members have the same or similar injury, whether the action is based on conduct that

24  is not unique to the named plaintiffs, and whether other class members have been injured by the

25  same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation

26  and internal quotations omitted).  Plaintiff's claims and those of the Settlement Class members are

27  based on the same course of conduct (missed meal and rest periods and off-the-clock work), and

28  ///

1    they have suffered similar injury (lack of compensation for those missed meal and rest periods and

2    off-the-clock work).

3         Third, Plaintiff will adequately represent the Settlement Class. As mentioned above, Plaintiff

4    is represented by counsel who is qualified to conduct the litigation. In addition, Plaintiff's interest in

5    the litigation is not antagonistic to the Class; in other words, she has no disabling conflict of interest

6    that might hinder the prosecution of the action on behalf of the Class. In fact, her interests in the

7    litigation are co-extensive with those of the Class. Plaintiff was employed by Defendant during the

8    Class Period, she has allegedly been injured in the same manner by the same practices or course of

9    conduct as the other Settlement Class members, and she seeks the same relief as the Settlement Class

10   members. She has further agreed to serve as the class representative and has retained qualified

11   counsel, demonstrating his commitment to bringing about the best possible results for the benefit of

12   the Class.

13        Fourth, common questions of law and fact predominate here because this action focuses on

14   Defendant's alleged uniform course of conduct with regard to providing meal and rest breaks to the

15   Settlement Class members. Plaintiff alleges that Defendant consistently failed to provide requisite

16   meal and rest periods or compensation in lieu thereof and failed to pay employees for off-the-clock

17   work. Defendant's legal defenses to these claims are also based on the same theories with respect to

18   all Settlement Class members.

19        Finally, with respect to the requirements of subsection (b), Rule 23(b)(3) allows class

20   certification where common questions of law and fact predominate over individual questions and

21   class treatment is superior to individual litigation. As stated above, this case involves allegations of

22   common, company-wide policies regarding meal and rest periods and off-the-clock work that

23   affected all non-exempt employees similarly. As for superiority, given the relatively small damages

24   per individual claimant, coupled with the large class size, class treatment is superior to individual

25   litigation.

26        As other courts have found, class actions alleging meal and rest break violations are

27   appropriate for class certification because common questions of law and fact predominate in these

28   cases. *See, e.g., Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 607-08, 612-13 (C.D. Cal.

1  2005); *Morton v. Valley Farm Transport, Inc.*, 2007 WL 1113999, \*5 (N.D. Cal. April 13, 2007).

2  When assessing these issues of predominance and superiority, the court may consider that the class

3  will be certified for settlement purposes only. *Amchem Products, Inc., et al. v. George Windsor, et*

4  *al.*, 521 U.S. 591, 618-20, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).  A showing of manageability

5  of trial is not required.  *Id.*  The test is "whether proposed classes are sufficiently cohesive to warrant

6  adjudication by representation."  *Id.* at 623; *see* Fed. R. Civ. P. 23(b)(3)(D).  The Settlement Class in

7  this case easily meets that requirement.

8         When a court has not yet entered a formal order determining that the action may be

9  maintained as a class action, the parties may stipulate that it be maintained as a class action for the

10  purpose of settlement only.  Newberg on Class Actions (4th ed. 2002) § 11.27.  In this case,

11  Defendant has agreed not to oppose Plaintiff's motion to maintain this action as class action for the

12  purposes of settlement only.  (See Settlement Agreement, ¶ 5.1.)

13                                         **VIII.**

14                                    **CONCLUSION**

15         For all the reasons discussed above, the Proposed Settlement is fair, adequate, and

16  reasonable, and in the best interests of the Settlement Class.  Plaintiff requests that the Court grant

17  preliminary approval to the Proposed Settlement, confirm class counsel and class representative as

18  requested, and to authorize the mailing of the proposed Notice, Claim Form, and Opt Out Form to

19  the members of the Settlement Class.

20

21  August 14, 2008                    THE COOPER LAW FIRM, P.C.

22

23                                    By: _____
                                          Scott B. Cooper
24                                        Attorneys for Plaintiff

25

26

27

28

# EXHIBIT A

Jose R. Garay, Esq., SBN 200494
JOSE GARAY, *APLC*
2030 Main Street, Suite 1300
Irvine, CA 92614
TEL: (949) 260-9193
FAX: (949) 260-9194

Roger Carter, Esq., SBN 140196
THE CARTER LAW FIRM
2030 Main Street, Suite 1300
Irvine, CA 92614
TEL: (949) 260-4737
FAX: (949) 260-4754

Scott B. Cooper, SBN 174520
THE COOPER LAW FIRM, P.C.
2030 Main Street, Suite 1300
Irvine, CA 92614
TEL: (949) 724-9200
FAX: (949) 724-9255

Attorneys for Plaintiff, BRITTANY KEENE
on behalf of herself and all others similarly
situated

REBECCA EISEN, State Bar No. 096129
ERIC MECKLEY, State Bar No. 168181
SHANNON B. NAKABAYASHI, State Bar No. 215469
STEVEN GARRETT, State Bar No. 220021
MORGAN, LEWIS & BOCKIUS, LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: 415.442.1000
Fax: 415.442.1001
reisen@morganlewis.com
emeckley@morganlewis.com
snakabayashi@morganlewis.com
steven.garrett@morganlewis.com

Attorneys for Defendant
COLDWATER CREEK, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTANY KEENE on behalf of herself and all others similarly situated,<br><br>            Plaintiff,<br><br>    vs.<br><br>COLDWATER CREEK, INC., a Delaware corporation, and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No. 07 CV 05324 WHA<br><br>**STIPULATION OF CLASS ACTION SETTLEMENT** |

STIPULATION OF CLASS ACTION SETTLEMENT

**CLASS ACTION SETTLEMENT AGREEMENT**

This Stipulation of Class Action Settlement is entered into by and between Plaintiff Brittany Keene on behalf of herself and as a representative of the Settlement Class described herein, and Defendant Coldwater Creek, Inc.  This Stipulation is made for the sole purpose of attempting to consummate settlement of this action on a class-wide basis.  As detailed below, in the event that the Court does not execute and file the Order Granting Final Approval of Settlement or the conditions precedent are not met for any reason, this Stipulation shall be deemed null and void and shall be of no force or effect whatsoever.

## I.    DEFINITIONS

As used in this Stipulation, the following terms shall have the meanings specified below:

1.1    "Alleged Claims" means the claims that were alleged in the Complaint filed by the Class Representative against Coldwater on September 6, 2007, including, but not limited to the following causes of action: (1) meal period violations (California Labor Code §§226.7 &512, Industrial Wage Commission ("IWC") Wage Order 7-2001); (2) rest period violations (California Labor Code §226.7, IWC Wage Order 7-2001); (3) failure to pay wages (California Labor Code §§ 201, 202, 218, 218.6, 221, 351, 510, 1194, 1198 & 1199, IWC Wage Order 7-2001) (4) failure to pay wages of terminated employees (California Labor Code §§ 201, 202 & 203, IWC Wage Order 7-2001); (5) inaccurate wage statements (California Labor Code §§ 226 & 1174, IWC Wage Order 7-2001); and (6) unlawful business practices (California Bus. and Prof. Code §17200).  Alleged Claims also means any and all claims asserted by the Class Representative under the Private Attorneys General Act ("PAGA") California Labor Code Section 2698, *et seq.,* as provided in Section 6.2.

1.2    "Attorney's Fees" shall have the meaning set forth in Section 7 of this Stipulation.

1.3    "Claims Administrator" means the third-party claims administration firm

1.4    "Class" and "Class Members" mean all current and former non-exempt employees working for Coldwater in California during the Class Period, regardless of title, location or position.

1

**STIPULATION OF CLASS ACTION SETTLEMENT**

1.5    "Class Counsel" means:

Jose R. Garay, Esq., SBN 200494
JOSE GARAY, *APLC*
2030 Main Street, Suite 1300
Irvine, CA 92614
TEL:  (949) 260-9193
FAX: (949) 260-9194

Roger Carter, Esq., SBN 140196
THE CARTER LAW FIRM
2030 Main Street, Suite 1300
Irvine, CA 92614
TEL:  (949) 260-4737
FAX:  (949) 260-4754

Scott B. Cooper, SBN 174520
THE COOPER LAW FIRM, P.C.
2030 Main Street, Suite 1300
Irvine, CA 92614
TEL:  (949) 724-9200
FAX:  (949) 724-9255

1.6    "Class Period" means the period from September 6, 2003 to the Date of Preliminary Approval.

1.7    "Class Representative" means Plaintiff Brittany Keene and anyone acting on her behalf.

1.8    "Compensable Shifts" means the total number of shifts a Class Member worked as a non-exempt employee in California during the Class Period.

1.9    "Court" or "District Court" means the United States District Court for the Northern District of California.

1.10    "Date of Final Approval" means the date the Court enters an order granting final approval of the Settlement.

1.11    "Date of Preliminary Approval" means the date the Court enters an order granting preliminary approval of the Settlement.

1.12    "Day" means calendar day, unless expressly stated otherwise.

1.13    "Defendant" or "Coldwater Creek" means Defendant Coldwater Creek, Inc., its parent, subsidiaries, affiliates, successors and assigns and anyone acting on their behalf.

1.14    "Defendant's counsel" means:

2

STIPULATION OF CLASS ACTION SETTLEMENT

REBECCA EISEN, State Bar No. 096129
ERIC MECKLEY, State Bar No. 168181
SHANNON B. NAKABAYASHI, State Bar No. 215459
STEVEN GARRETT, State Bar No. 220021
MORGAN, LEWIS & BOCKIUS, LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: 415.442.1000
Fax: 415.442.1001
reisen@morganlewis.com
emeckley@morganlewis.com
snakabayashi@morganlewis.com
steven.garrett@morganlewis.com

1.15 "Effective Date" means the date on which the District Court's Order granting final approval of the Settlement becomes final. For purposes of this Paragraph, the District Court's Order "becomes final" upon the last to occur of the following: (a) if there are no objections to the Settlement, the date of entry of the Order; (b) if there are objections to the Settlement, and if an appeal, review, or writ is not sought from the Order, the 31st day after service of the Order; or (c) if an appeal, review, or writ is sought from the Order, the day after the Order is affirmed or the appeal, review, or writ is dismissed or denied, and the Order is no longer subject to further judicial review.

1.16 "Last Known Address" means the most recently recorded mailing address for a Class Member as such information is contained in the personnel records maintained by Coldwater Creek.

1.17 "Lawsuit" or "Complaint" means the action entitled Brittany Keene v. Coldwater Creek, Inc., Case No. 07-CV-05324 WHA, pending in the United States District Court for the Northern District of California.

1.18 "Litigation Expenses" means those expenses and costs of litigation incurred by Class Counsel and approved for reimbursement by the Court, excluding costs or fees of the Claims Administrator.

1.19 "Maximum Settlement Consideration" means the maximum amount that Coldwater Creek shall pay under the terms of this Stipulation, which is Nine Hundred and Fifty Thousand Dollars ($950,000.00), and is inclusive of all Settlement Payments, the PAGA Penalty Payment, Attorney's Fees, Litigation Expenses, Claims Administration Costs, and any Service Payment to the

3

1-SF/7715328.3

1 Class Representative. This amount does not include the employer's share of payroll taxes, such as
2 FICA, except to the extent that those taxes may be paid by Coldwater Creek using any Unclaimed
3 Amount.

4       1.20    "Net Settlement Consideration" means the Maximum Settlement Consideration less
5 Attorneys' Fees, Litigation Expenses, Claims Administration Costs (up to a maximum of $50,000),
6 any Service Payment to the Class Representative, and the PAGA Penalty Payment.

7       1.21    "Notice of Pendency of Class Action Settlement" or "Notice" shall have the meaning
8 set forth in Section 9.1 of this Stipulation.

9       1.22    "Notice Period" shall have the meaning set forth in Section 9 of this Stipulation.

10       1.23    "Participating Claimant" means each Class Member who timely submits a Qualifying
11 Settlement Claim Certification Form in response to the Notice of Pendency of Class Action
12 Settlement.

13       1.24    The "Parties" mean the Class Representative and Coldwater Creek.

14       1.25    "Qualifying Settlement Claim Certification Form" means a Settlement Claim
15 Certification Form that is completed, properly executed and timely returned to the Claims
16 Administrator.

17       1.26    "Reasonable Address Verification Measure" means the utilization of the process
18 outlined in Section 9.2.

19       1.27    "Released Claims" shall have the meaning set forth in Section 12 of this Stipulation.

20       1.28    "Released Parties" means Coldwater Creek, Inc., and each and all of its respective
21 past and present parents, subsidiaries, affiliated companies and corporations, and each and all of
22 their respective past and present directors, officers, managers, employees, general partners, limited
23 partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives,
24 predecessors, successors, divisions, joint venturers, assigns, or related entities, and each and all of
25 their respective executors, successors, assigns and legal representatives.

26       1.29    "Service Payment" shall have the meaning set forth in Section 6 of this Stipulation.

27       1.30    "Settlement" means the terms and conditions set forth in this Stipulation.

28

1.31    "Settlement Claim Certification Form" means the form attached as Form A to the Notice of Pendency of Class Action Settlement.

1.32    "Settlement Class" and "Settlement Class Member" mean all individuals who have not opted out of the Settlement after Notice and who are therefore in the class that is certified for purposes of Settlement only, following the entry of an appropriate Order by the Court.

1.33    "Settlement Payment" means the total, gross amount due to an individual Participating Claimant, which shall be calculated as described in Sections 6.3, 6.5 and 6.7(B) of this Stipulation.

1.34    "Stipulation," "Stipulation of Settlement" and "Agreement" means this particular agreement entered into by the Parties to effectuate the terms of the Settlement.

1.35    "Total Consideration Payment" means the total amount paid by Coldwater Creek in consideration for settlement of the Lawsuit, including Settlement Payments, the PAGA Penalty Payment, Attorneys' Fees, Litigation Expenses, Claims Administration Costs, and any Enhancement Payment to the Class Representative. The Total Consideration Payment shall not include any Unclaimed Amount.

1.36    "Unknown Claims" shall have the meaning set forth in Section 12 of this Stipulation.

1.37    "Updated Address" means a mailing that was updated via Reasonable Address Verification measures or via an updated mailing address provided by the United States Postal Service or a Class Member.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

A.    On September 6, 2007, the Class Representative filed a Complaint, initiating a class action lawsuit against Coldwater in the Alameda County Superior Court, entitled Brittany Keene v. Coldwater Creek, Inc., Case No. RG07344777 (the "Lawsuit"). On October 18, 2007, Coldwater timely removed the Lawsuit to United States District Court for the Northern District of California (Case No. 07-CV-05324 WHA).

B.    The Complaint alleges six causes of action under California law for (1) failure to provide meal periods or compensation in lieu thereof, (2) failure to provide rest periods or

5

1-SF/7715328.3

1   compensation in lieu thereof, (3) failure to pay wages, (4) failure to pay wages of terminated or

2   resigned employees, (5) knowing and intentional failure to comply with itemized employee wage

3   statement provisions, and (6) violations of the Unfair Competition Law. The Complaint also seeks

4   pre-judgment interest and attorney's fees and costs. As set forth more fully in Paragraph 4.2, and as

5   an express condition precedent to the validity and effectiveness of this Settlement, the Class

6   Representative shall amend the Complaint prior to the Date of Preliminary Approval to include

7   claim(s) for penalties under California's Private Attorney General Act ("PAGA"), California Labor

8   Code Section 2698, *et seq.,* based on the claims alleged in the Complaint.

9          C.     The Alleged Claims are brought on behalf of all Class Members. The Class

10  Representative was formerly employed by Coldwater Creek as a sales associate and cashier and was

11  paid on an hourly, non-exempt basis.

12         D.     On June 6, 2008, the Parties participated in mediation before Michael Dickstein, Esq. a

13  respected neutral mediator. With Mr. Dickstein's assistance, the Parties reached the conditional

14  agreement reflected in this Stipulation. At all times, the Parties' negotiations were adversarial, non-

15  collusive, and at an arms length.

16         E.     Prior to the mediation, the Parties engaged in both formal and informal discovery.

17  Coldwater Creek responded to the Class Representative's Requests for Production of Documents and

18  Special Interrogatories and produced documents, including time keeping "punch data" and payroll

19  records for the Class Representative. Pursuant to the Court's February 28, 2008 Order, Coldwater

20  Creek also provided complete time records for a random sample of current and former employees,

21  which encompassed over 500 pages of detailed punch data. Coldwater Creek also produced more

22  than one hundred pages of documents relating to its applicable policies and procedures. The Class

23  Representative took the deposition of Coldwater Creek pursuant to Federal Rules of Civil Procedure

24  30(b)(6) on a number of topics. Coldwater Creek took the deposition of the Class Representative.

25  **III.    ADDITIONAL RECITALS**

26         A.     The Parties are sufficiently familiar with the facts of the Lawsuit and the applicable

27  law so as to warrant settlement at this time.

28

**STIPULATION OF CLASS ACTION SETTLEMENT**

1-SF/7715328.3

1    B.    The Parties are represented by competent counsel and have had the opportunity to

2  consult with counsel prior to the submission of this Stipulation to the Court.

3  Pursuant to Federal Rules of Evidence 408 and California Evidence Code Sections 1119 and 1152,

4  this Stipulation and any related documents filed or created in connection with it shall be inadmissible

5  in evidence in any proceeding, except as necessary to approve, interpret or enforce this Stipulation.

6    C.    Defendant denies any liability or wrongdoing of any kind associated with the Alleged

7  Claims, and further denies that, for purposes other than the settling of this Lawsuit, any part of this

8  Lawsuit is appropriate for class treatment. Defendant has denied and continue to denies each and

9  every material factual allegation and alleged claim asserted in the Lawsuit. Nothing herein shall

10  constitute an admission by Defendant of wrongdoing or liability or of the truth of any factual

11  allegations in the Lawsuit. Nothing herein shall constitute an admission by Defendant that the

12  Lawsuit is properly brought on a class or representative basis other than for settlement purposes. To

13  this end, the settlement of the Lawsuit, the negotiation and execution of this Agreement, and all acts

14  performed or documents executed pursuant to or in furtherance of the Settlement: (i) are not, shall

15  not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or

16  liability on the part of Defendant or of the truth of any of the factual allegations in the Lawsuit; (ii)

17  are not, shall not be deemed to be, and may not be used as, an admission or evidence of any fault or

18  omission on the part of Defendant in any civil, criminal or administrative proceeding in any court,

19  administrative agency or other tribunal; and (iii) are not, shall not be deemed to be, and may not be

20  used as, an admission or evidence of the appropriateness of these or similar claims for class

21  certification. Nonetheless, Coldwater Creek has concluded that further litigation would be

22  protracted and expensive, and would also divert management and employee time. Coldwater Creek

23  has taken into account the uncertainty and risks inherent in litigation. Coldwater Creek has therefore

24  concluded that it is desirable that the Lawsuit be fully and finally settled in the manner and upon the

25  terms and conditions set forth in this Stipulation.

26    D.    The Class Representative and Class Counsel believe that the claims asserted in this

27  lawsuit have merit. Class Counsel, however, recognizes and acknowledges the significant expense

28

7

**STIPULATION OF CLASS ACTION SETTLEMENT**

1  and length of continued proceedings necessary to prosecute the litigation against Coldwater Creek

2  through trials and through appeals.  Class Counsel is also mindful of the challenges of obtaining

3  class certification and the problems of proving liability and damages and possible defenses to the

4  Alleged Claims.  Class Counsel has performed a thorough study of the law and facts relating to the

5  Alleged Claims and has concluded, based upon their investigation and pre-mediation discovery, and

6  taking into account the sharply contested issues, the expense and time necessary to pursue the action

7  through trial, the risks and costs of further prosecution of the Lawsuit, the uncertainties of complex

8  litigation, and the substantial benefits to the members of the Settlement Class and the State of

9  California, that a settlement with Defendant on the terms set forth herein is fair, reasonable, adequate

10 and in the best interests of the Settlement Class and the State of California.  Both Class Counsel and

11 the Class Representative believe that the settlement set forth in this Stipulation confers substantial

12 benefits upon the Settlement Class and each of the Class Members.

13        E.    The Class Representative is entitled to a service payment for her risk and service on

14 behalf of the Settlement Class, which include: (1) participating in a full day deposition (including a

15 second day dedicated to a multi-hour prep session); (2) reviewing documents and related discovery;

16 (3) attending strategy sessions and meetings with Class Counsel; (4) providing a full general release that is

17 much broader than the "Released Claims"; (5) accepting the potential risk of being liable for the

18 opposing parties' costs and/or attorneys' fees if Class Counsel was unsuccessful in this lawsuit, and

19 (6) risking the potential stigma of being the Class Representative in a class action labor dispute

20 which could affect her future employability in this industry.

21 **IV.    CONDITIONS PRECEDENT TO EFFECTIVENESS OF STIPULATION**

22        4.1    The Parties enter into this Stipulation and the Settlement on a conditional basis.

23        This Stipulation and Settlement will become final and effective <u>only</u> upon the occurrence of

24 all of the following events:

25        (A)    As set forth in Paragraph 6.2 below, the Class Representative timely notifies the

26              California Labor Workforce Development Agency ("LWDA") via certified mail of

27              her PAGA claims and pursuant to California Labor Code Section 2699.3(a)(2):

28

1    (1) the LWDA notifies the Class Representative within thirty days of the postmark

2    date of the Class Representative's notice that it does not intend to investigate the

3    alleged violations; or (2) no notice is received from the LWDA within thirty-three

4    (33) calendar days of the postmark date of the Class Representative's notice.

5    Pursuant to Labor Code Section 2699.3(C), the Class Representative must then file an

6    Amended Complaint containing all PAGA allegations specified in her notice to the

7    LWDA.  Coldwater Creek will stipulate to the filing of such an Amended Complaint.

8    (B)   The Court enters an order granting preliminary approval of the Settlement;

9    (C)   The Court enters an order granting final approval of the Settlement;

10   (D)   The Lawsuit is dismissed with prejudice; and

11   (E)   The Effective Date occurs, and any challenge to the Settlement, whether by objection

12   or appeal, is resolved in favor of enforcement of the Settlement.

13   4.2    Unless the Court orders otherwise or agreed in writing by the Parties, this Stipulation

14   shall be deemed null and void *ab initio* upon the failure of any of these five conditions to occur.

15   **V.    CONDITIONAL CLASS CERTIFICATION**

16   5.1    The Parties conditionally stipulate to class certification for purposes of the Settlement

17   only.  If the Court does not grant preliminary or final approval of this Settlement or, if appealed, the

18   Settlement is not affirmed, the Parties agree that class certification will automatically be deemed

19   revoked.  The Parties will take any other steps necessary to decertify the class.  In the event that the

20   class certification for settlement purposes is deemed revoked, then that class certification shall have

21   no precedential value and it shall not be introduced into evidence or used for any other purpose.

22   **VI.    SETTLEMENT CONSIDERATION**

23   6.1    Total Settlement Amount - Coldwater Creek agrees to pay each Participating

24   Claimant his or her Settlement Payment as consideration for settlement of the lawsuit.  The

25   Maximum Settlement Consideration shall not exceed the aggregate sum of Nine Hundred and Fifty

26   Thousand Dollars ($950,000.00).  The settlement is not subject to California Code of Procedure

27   section 384.  Notwithstanding any other provision in this Stipulation, aside from the employer's

28

9

**STIPULATION OF CLASS ACTION SETTLEMENT**

1    share of any applicable payroll taxes, in no event will Coldwater Creek be obligated to pay more

2    than Nine Hundred and Fifty Thousand ($950,000.00) in total settlement of the Lawsuit, including

3    all Settlement Payments, Litigation Expenses, Claims Administration Costs, Service Payment,

4    PAGA Penalty Payment, or any other amounts whatsoever. The Total Consideration Payment will

5    constitute adequate consideration for this Settlement and will be made in full and final settlement of:

6          (A)    The Released Claims during the Class Period;

7          (B)    Class Counsel's claim for Attorneys' Fees and Litigation Expenses; and

8          (C)    Any other obligation of the Parties under this Stipulation.

9        6.2    PAGA Penalties - Coldwater Creek shall pay Thirty Thousand Dollars and No Cents

10   ($30,000.00) for settlement of any and all Alleged Claims for which penalties under the Private

11   Attorney General's Act ("PAGA"), Labor Code Section 2698 *et seq.*, may be sought or are otherwise

12   available. The Class Representative agrees that she will timely exhaust her administrative PAGA

13   remedies. She will notify the California Labor Workforce Development Agency ("LWDA") via

14   certified mail of her PAGA claims and the PAGA claims of the putative class. If pursuant to

15   California Labor Code Section 2699.3(a)(2) the LWDA notifies the Class Representative within

16   thirty days of the postmark date of the Class Representative's notice that it does not intend to

17   investigation the alleged violation, or no notice is received from the LWDA within thirty-three (33)

18   calendar days of the postmark date of the Class Representative's notice, the Class Representative

19   agrees promptly to file an Amended Complaint pursuant to Labor Code Section 2699.3(C). The

20   filing of the Amended Complaint is a condition precedent to this Settlement becoming effective.

21       Pursuant to the express requirements of Labor Code Section 2699(i), the PAGA payment

22   shall be allocated as follows: $22,500 (75%) to the California Labor & Workforce Development

23   Agency ("LWDA") for the enforcement of labor laws and education of employers, and $7,500

24   (25%) to the Participating Claimants on a pro rata basis. The PAGA Penalty Payments to

25   Participating Claimants are not wages.

26       Should either the Class Representative fail to file an Amended Complaint or the LWDA

27   provide notice that it intends to investigate the Class Representative's claims or otherwise preclude

28

10

**STIPULATION OF CLASS ACTION SETTLEMENT**

1   the Class Representative from asserting PAGA claims, Coldwater Creek shall have the right, in its

2   sole discretion, to revoke the Settlement Agreement and the Settlement shall be void *ab initio*.

3        6.3    Payment to Participating Claimants - Each Participating Claimant shall receive a

4   Settlement Payment, which is a share of the Net Settlement Consideration based on the number of

5   Compensable Shifts worked by the Participating Claimant during the Class Period. The Settlement

6   Payment for each individual Participating Claimant shall be calculated by dividing the Net

7   Settlement Consideration by the total number of shifts worked by all Class Members during the

8   Class Period, and then multiplying that number by the total number of Compensable Shifts worked

9   by the individual Class Member. By way of example only, if the total number of Compensable

10  Shifts worked by all Class Members combined is 400,000 and if the Net Settlement Consideration is

11  $600,000, and if the individual Participating Claimant worked 260 Compensable Shifts (i.e., an

12  employee working 5 days per week for approximately one year), then the Participating Claimant in

13  this example would receive: $390.00 [i.e., 600,000 divided by 400,000 = $1.50, multiplied by 260).

14       The Parties recognize and agree that the claims raised by the Lawsuit, including specifically

15  the claims for missed meal periods, missed rest periods, unpaid overtime and "off the clock" work,

16  are extremely difficult to determine with any certainty for any given time period, or at all.

17  Defendants deny any liability for missed meal periods, missed rest periods, unpaid overtime and "off

18  the clock" work. The Alleged Claims are subject to different calculations and formulae and

19  currently there is uncertainty as to the applicable standard for the meal period claims. The Parties

20  also recognize and agree that, given the number of Defendant's non-exempt employees in California

21  during the Class Period (i.e., more than 2,800), it would be extremely burdensome and unduly costly

22  to discern exactly which individuals were not provided meal periods, were not provided rest periods,

23  were not paid overtime and/or who were required to work "off the clock". The Parties hereby agree

24  that the formula for allocating the settlement payments to Participating Claimants provided herein is

25  reasonable and that the settlement payments provided herein are designed to provide a fair settlement

26  to the Class, despite the uncertainties associated with the amounts alleged to be owed.

27

28

1-SF/7715328.3

1    Each Participating Claimant shall also receive his or her pro rata share of the $7,500 portion

2    of the PAGA Penalty Payment to be distributed to Participating Claimants.

3        6.4   Service Payment to the Class Representative - Coldwater Creek agrees to pay a

4    Service Payment of Seven Thousand Five Hundred Dollars ($7,500.00) to the Class Representative

5    upon Class Counsel's application and the Court's approval, pursuant to Section 6. The Class

6    Representative shall be issued an IRS Form 1099 for any Service Payment. The Class

7    Representative hereby acknowledges that she has obtained no tax advice from Coldwater Creek and

8    that neither Coldwater Creek nor its attorneys has made any representation concerning the tax

9    consequences, if any, of the Service Payment. The Class Representative agrees that she is solely

10   responsible for the tax consequences of the Service Payment. The Class Representative further

11   agrees that, in the event that any taxing authority looks to the Coldwater Creek or any related entity

12   for satisfaction of any tax liability or for payment of any tax-related liability of any kind including

13   but not limited to penalties, fines, interest or withholdings, associated with the monies paid to the

14   Class Representatives or Class Counsel under this Agreement, she and Class Counsel shall

15   indemnify and hold Coldwater Creek harmless for all taxes, penalties, interest, withholdings,

16   amounts paid in settlement to any taxing authority, and expenses, including but not limited to

17   defense expenses and attorneys' fees, with regard to the payments to each respectively. In the event

18   that Coldwater Creek's right to indemnification under this paragraph is triggered, Coldwater Creek

19   shall have the right to defend itself, select its own counsel, decide to contest or settle any claims

20   asserted, and direct its strategy and defense in relation to matters involving any taxing authority.

21   Coldwater Creek shall advise the Class Representative and Class Counsel in writing within five

22   (5) business days of their knowledge of any event triggering the Coldwater Creek's right to

23   indemnification, and the Class Representative and Class Counsel shall have the continuing right to

24   be advised of the status of any such action.

25       6.5   For the purpose of calculating applicable taxes for the payments to Participating

26   Claimants (including any payments to the Class Representative exclusive of her Service Payment),

27   the Parties agree that fifty percent (50%) of each Settlement Payment constitutes wages in the form

28

12

**STIPULATION OF CLASS ACTION SETTLEMENT**

1    of backpay (and each Participating Claimant will be issued an IRS Form W-2 for such payment to

2    him or her), and fifty percent (50%) of each Settlement Payment constitutes interest, penalties and

3    other non-wage payments (and each Participating Claimant will be issued an IRS Form 1099 for

4    such payment to him or her).  Coldwater shall not be responsible for payroll tax payments on any

5    portion of the Settlement Consideration that is attributable to Attorneys' Fees, Litigation Expenses,

6    Claims Administration Costs, PAGA Penalty Payment, penalties, interest or any Class

7    Representative Service Payment.  The Parties further understand that the Class Representative and

8    any Participating Claimant who receives any Settlement Payment pursuant to this Stipulation shall

9    be solely responsible for any and all tax obligations associated with such receipt, except as set forth

10   in this Section.  Coldwater Creek understands and agrees that it shall be responsible for paying the

11   employer's share of any applicable payroll taxes, including those collected under the authority of the

12   Federal Insurance Contributions Act (FICA), separate and apart from, and in addition to, the

13   Maximum Settlement Consideration.

14        6.6    Coldwater Creek will not use the Settlement Payments to calculate any additional

15   benefits including, for example (but without limitation), vacation, holiday pay, pension, or 401(k)

16   plan contributions.  Coldwater Creek contends that the Settlement Payments do not represent any

17   modification of previously credited hours of service or other eligibility criteria under any employee

18   pension or employee welfare benefit plan sponsored by Coldwater Creek.  Nor does Coldwater

19   Creek consider the Settlement Payments "compensation" for purposes of determining eligibility for,

20   or benefit accrual within, an employee pension benefit plan, an employee welfare benefit plan, or

21   other plan sponsored by Coldwater or its predecessors, subsidiaries, or successors.

22        6.7    <u>Unclaimed Portion of the Net Settlement Consideration</u>

23            (A)    Coldwater Creek shall not be required to pay any Unclaimed Amount that

24   remains after payment of the Settlement Payments.  The "Unclaimed Amount" shall be the amount

25   of the Net Settlement Consideration less the total of Settlement Payments allocated to Participating

26   Claimants.  However, in no case shall the Unclaimed Amount exceed fifty percent (50%) of the Net

27   Settlement Consideration.

28

13

**STIPULATION OF CLASS ACTION SETTLEMENT**

1        (B)    In the event that the sum of the (a) Settlement Payments allocated to

2   Participating Claimants and (b) any Claims Administration Costs in excess of $50,000, is less than

3   fifty percent (50%) of the Net Settlement Consideration, the total amount of Settlement Payments

4   shall be adjusted to an amount equal to fifty percent (50%) of the Net Settlement Consideration.  In

5   that case, the Settlement Payment for each Participating Claimant shall be increased to include a pro

6   rata share of the difference between the Net Settlement Consideration and the total of Settlement

7   Payments, based on the number of Shifts worked by each Participating Claimant during the Class

8   Period.

9        (C)    The Claims Administrator shall notify Coldwater Creek's counsel of the

10  Unclaimed Amount pursuant to Section 10.2 of this Stipulation, and Coldwater shall, at all times,

11  retain custody and control of the Unclaimed Amount.

12      6.8    The Settlement Payments shall be paid according to Section 10 of this Stipulation.

13  **VII.    ATTORNEYS' FEES AND COSTS OF CLASS COUNSEL**

14      7.1    Counsel will submit an application for:  (a) an award of Attorneys' Fees of no more

15  than thirty percent (30%) of the Maximum Settlement Consideration; and (b) an award of actual

16  Litigation Expenses not to exceed Fifteen Thousand Dollars ($15,000).  The amounts set forth in this

17  Section will constitute complete consideration for all work performed and expenses incurred to date

18  and for all worked to be performed and expenses to be incurred through the completion of the

19  litigation and its settlement.  Coldwater Creek will not oppose a motion for approval of Class

20  Representative's Attorneys' Fees and Litigation Expenses consistent with this Section.

21      7.2    The Attorneys' Fees and Litigation Expenses shall be paid according to Section 10.4

22  of this Stipulation.

23  **VIII.   COSTS OF CLAIMS ADMINISTRATION**

24      8.1    "Claims Administration Costs" shall include all costs and expenses due to the Claims

25  Administrator in connection with its administration of the claims including, but not limited to,

26  providing Notice, locating Class Members, processing Opt-Out Forms and Settlement Claim

27  Certification Forms, and administering and distributing Settlement Payments to the Settlement Class

28

**STIPULATION OF CLASS ACTION SETTLEMENT**

1   Members. All Claims Administration Costs shall be paid from the Maximum Settlement

2   Consideration. The Claims Administration Costs are not to exceed fifty thousand dollars

3   ($50,000.00). If the Claims Administration Costs exceed fifty thousand dollars ($50,000.00), the

4   additional Costs shall be paid from the Unclaimed Amount of the Net Settlement Consideration,

5   after such amount is calculated by the Claims Administrator. If the Unclaimed Amount of the Net

6   Settlement Consideration exceeds fifty percent (50%), the Claims Administration Costs in excess of

7   $50,000 shall be added to the amount of the Net Settlement Consideration before calculating the

8   adjusted Settlement Payments to Participating Claimants pursuant to Section 6.8(B) above.

9   **IX.    NOTICE PROCEDURE**

10      9.1    Notice to Class Members

11      Within twenty-one (21) calendar days after preliminary approval of this Settlement

12  Agreement, Defendant will provide to the Claims Administrator all of the following information

13  about each Class Member in a format requested by the Claims Administrator: (1) name, (2) Last

14  Known Address, (3) Social Security number, and (4) the number of Compensable Shifts the

15  employee worked. Not later than thirty-five (35) calendar days following the Date of Preliminary

16  Approval, the Claims Administrator shall send, via U.S. Mail, to each of the Class Members a

17  Notice of Pendency of Class Action Settlement (hereafter, "Notice"), an Opt-Out Form, and a

18  Settlement Claim Certification Form substantially in the form attached hereto and made a part hereof

19  as Exhibits "A" – "C" respectively.  The Claims Administrator shall send each mailing to the Last

20  Known Address of each Class Member and comply with the procedures specified in Section 9.2 of

21  this Stipulation.

22      9.2    Updating Last Known Addresses of Class Members

23      Prior to mailing the Class Notice to each Class Member, the Claims Administrator shall

24  undertake a Reasonable Address Verification Measure to ascertain the current accuracy of the Last

25  Known Address for each Class Member. The Claims Administrator will:

26      (1)    receive the last-known addresses and social security numbers of Settlement Class

27  Members from Coldwater Creek;

28

1      (2)     run that list through the United States Postal Service's National Change of Address

2  database;

3      (3)     if necessary, perform address searches using public and proprietary electronic

4  resources that collect data from sources such as utility records, property tax records, motor vehicle

5  records (where permitted), and credit bureaus; and

6      (4)     Class Members still employed by Coldwater Creek will receive workplace notice via

7  e-mail, if applicable, or conventional mail at their work addresses

8      9.3    Date of Mailing and Re-Mailing of Notice

9      Unless the Claims Administrator receives a Notice returned from the United States Postal

10  Service, that Notice shall be deemed mailed on the date the Claims Administrator places the Notice

11  with the United States Postal Service for mailing. In the event that, subsequent to the first mailing

12  and at least seven (7) days prior to the end of the Notice Period, the Notice is returned by the United

13  States Postal Service to the Claims Administrator with a forwarding address for the recipient, the

14  Claims Administrator shall re-mail the notice to that address no later than the last day of the Notice

15  Period, and the forwarding address will be deemed the Updated Address for that Class Member. In

16  the event that subsequent to the first mailing and at least seven (7) days prior to the end of the Notice

17  Period the Notice is returned by the United States Postal Service to the Claims Administrator

18  without a forwarding address (i.e., the address is no longer valid and the envelope is marked "Return

19  to Sender"), the Claims Administrator shall complete a standard skip trace in an effort to ascertain

20  the current address of the particular Class Member in question and, if such address is ascertained, the

21  Claims Administrator will re-send the Notice no later than the last day of the Notice Period; if no

22  Updated Address is ascertained for that Class Member, the Claims Administrator will re-send the

23  Notice to the Last Known Address no later than the last day of the Notice Period. For those Class

24  Members who are re-sent the Notice under this section, the Notice Period shall be extended another

25  twenty-five (25) days beyond the initial Notice Period.

26

27

28

**STIPULATION OF CLASS ACTION SETTLEMENT**

1-SF/7715328.3

1    9.4    Opt-Out and Claims Procedure

2    (A)    Subject to Court approval, Class Members shall have forty-five (45) days

3    from the date that the Claims Administrator mails the Notice to them (referred to hereafter as the

4    "Notice Period") to properly complete the Settlement Claim Certification Form or Opt-Out Form and

5    to return it by mail to the Claims Administrator. The date of mailing of the Opt-Out Form or

6    Settlement Claim Certification Form is deemed to be the date the form is deposited in the U.S. Mail,

7    postage prepaid, as evidenced by the post-mark. If the last day of the Notice Period falls on a

8    Sunday or legal holiday, the Notice Period shall be deemed to extend through the next business day.

9    Class Members who do not properly and/or timely submit the Opt-Out Form become Settlement

10   Class Members and shall be subject to the Settlement and Final Order from the Court. Class

11   Members that do not properly and/or timely submit the Settlement Claim Certification Form shall

12   not become a Participating Claimant, and shall not be entitled to any Settlement Payment.

13   (B)    Class Members who submit both a Settlement Claim Certification Form and

14   an Opt-Out Form shall be sent a cure letter by the Claims Administrator seeking clarification of the

15   response they want to submit. Absent any timely cure, they will be deemed Participating Claimants.

16   (C)    Class Members shall be instructed to provide a Social Security or taxpayer

17   identification number on their Settlement Claim Certification Form.

18   (D)    Coldwater Creek's records will be presumed determinative with respect to

19   whether each Class Member is a qualified Class Member, i.e. worked in California as a non-exempt

20   employee during the Class Period. The personnel and payroll records of Coldwater Creek shall also

21   be presumed correct for determining the number of Compensable Shifts. If for any reason a Class

22   Member disagrees with Coldwater Creek's records, he or she shall be provided the opportunity to

23   submit any objections along with any supporting documentation to the Claims Administrator along

24   with his or her Settlement Claim Certification Form. The Settlement Administrator shall have the

25   authority, based on Coldwater Creek's records and the information provided by the Class Member,

26   to issue a final non-appealable decision with regard to the total Settlement Payment due.

27

28

17

**STIPULATION OF CLASS ACTION SETTLEMENT**

1            (E)    Within five (5) business days after the expiration of the Notice Period the

2    Claims Administrator shall notify Class Counsel and Coldwater Creek's counsel of (i) the Class

3    Members who have opted out of the Class; and (ii) the Class Members who have submitted

4    Qualifying Settlement Claim Certification Forms.  The Claims Administrator shall identify these

5    Class Members by employee identification number.

6            (F)    In the event that ten percent (10%) or more of all Class Members timely

7    request exclusion (Opt-Out) from the Settlement Class by submitting Opt-Out Forms, or Class

8    Members possessing, in the aggregate, claims of ten percent (10%) or more of the Net Settlement

9    Consideration submit timely Opt-Out Forms, Coldwater Creek shall have the absolute right in its

10    sole discretion to revoke and terminate this Agreement in its entirety.

11        9.5    Objections

12        Any Class Member who wishes to object to the Settlement must file and deliver a written

13    objection with the Court, and serve copies of the written objection to Class Counsel and counsel for

14    Coldwater, no later than forty-five (45) days from the date that Notice is mailed to them.  The date of

15    delivery of the written objection is deemed to be the date the objection is deposited in the U.S. Mail,

16    postage pre-paid, as evidenced by the postmark.  The objection must set forth, in clear and concise

17    terms, the legal and factual arguments supporting the objection.  Unless otherwise ordered by the

18    Court, Class Members shall not be entitled to speak at the Final Approval Hearing unless they have

19    submitted a timely written objection pursuant to this subsection.  Class Members who have properly

20    and timely submitted objections may appear at the Final Approval Hearing, either in person or

21    through a lawyer retained at their own expense.

22    **X.    PAYMENT OF CLAIMS**

23        10.1    As a condition of receiving any Settlement Payment under this Stipulation, Class

24    Members must not "opt-out" of the Class, must submit a Qualifying Settlement Claim Certification

25    Form, and must release the Released Claims.  Each Participating Claimant shall be entitled to a

26    payment equal to the sum of the Settlement Payment, less the required taxes and withholdings, plus a

27    pro rata share of the portion of the PAGA Penalty Payment distributed to Participating Claimants.

28

18
STIPULATION OF CLASS ACTION SETTLEMENT

1-SF/7715328.3

1    The amount of the Settlement Payment and the pro rata share of the PAGA Penalty Payment shall be

2    determined by the Claims Administrator in the manner described in Section 6.3. 6.5 and 6.7(B) of

3    this Stipulation.

4          10.2    Within ten (10) business days of notice by the Claims Administrator of the Class

5    Members who have made claims and those who have opted out of the Class, in accordance with

6    Section 9.4, the Claims Administrator will notify Coldwater Creek's counsel of:  (a) the Net

7    Settlement Consideration; (b) the Total Consideration Payment; and (c) the Unclaimed Amount, if

8    any.

9          10.3    The Claims Administrator shall be responsible for mailing payments to the Settlement

10    Class Members, as well as issuing payment of any Service Payment, Attorneys' Fees and Litigation

11    Expenses.

12          10.4    Not later than ten (10) business days following the Effective Date, Coldwater Creek

13    shall provide the Claims Administrator with the Total Consideration Payment.  However, in the

14    event that the Order on Class Counsel's application for Class Representative's Attorneys' Fees,

15    Litigation Expenses and Service Payment is not final within ten (10) business days of the Effective

16    Date, any amounts payable under such Order as part of the Total Consideration Payment will be paid

17    within ten (10) business days after the Order is deemed final and no longer subject to any further

18    judicial reconsideration, review or appeal.

19          10.5    Not later than thirty-five (35) days following the Effective Date, the Claims

20    Administrator shall mail to each Settlement Class Member a check in the amount(s) calculated

21    pursuant to Sections 6.3, 6.5, 6.7(B) and 10.1 of this Stipulation.  The Claims Administrator shall be

22    responsible for making any applicable employee payroll or other deductions from the Settlement

23    Payments.

24          10.6    Any checks issued to Participating Claimants shall remain negotiable for a period of

25    at least one hundred eighty (180) days from the date of mailing. The funds associated with any

26    checks which are not timely negotiated will be considered unclaimed property and turned over to the

27    State Controller's office pursuant to California Code of Civil Procedure section 1500 *et seq.* and

28

19

**STIPULATION OF CLASS ACTION SETTLEMENT**

1  California Administrative Code section 1150 *et seq.*  Participating Claimants who fail to negotiate

2  their check(s) in a timely fashion shall, like all Settlement Class Members, remain subject to the

3  terms of the Settlement and Final Order from the Court.

4  **XI.    DISMISSAL WITH PREJUDICE**

5      11.1    At the Final Approval Hearing, the Parties agree to jointly request that the Court

6  immediately enter an order dismissing the Lawsuit with prejudice and to take whatever steps may be

7  necessary to obtain such dismissal with prejudice.

8  **XII.    RELEASED CLAIMS**

9      12.1    Class Release

10      The Settlement Class Members, on behalf of themselves, and each of their heirs,

11  representatives, successors, assigns, and attorneys, hereby compromise, release, resolve, relinquish,

12  discharge and settle each and all of the Released Parties from each of the Released Claims that exist

13  in their favor through the Date of Preliminary Approval.  The Settlement Class Members further

14  agree that they will not institute any action or cause of action (in law, in equity or administratively),

15  suits, debts, liens, or claims, known or unknown, fixed or contingent, which they may have or claim

16  to have in state or federal court, or with any state, federal or local government agency (except the

17  EEOC) or with any administrative or advisory body, arising from or reasonably attributable to the

18  Released Claims.  The Participating Claimants shall specifically agree to the provisions of this

19  Section in the Settlement Claim Certification Form.

20      "Released Claims" means claims or causes of action that are based on or reasonably relate to

21  the Alleged Claims in the Complaint, including the alleged nonpayment of compensation for meal or

22  rest period violations; the alleged nonpayment of wages, including claims for alleged unpaid

23  overtime wages and "off-the-clock" work; the alleged failure to pay all wages due at termination

24  based on these alleged violations; the alleged inaccurate wage statements based on these alleged

25  violations; the alleged unfair or unlawful business practices based on these alleged violations

26  (including under Business & Professions Code Sections 17200 *et. seq.*); the alleged penalties under

27  PAGA (Labor Code §2698, *et seq.*) based on these alleged violations; and any premiums, penalties,

28

20

**STIPULATION OF CLASS ACTION SETTLEMENT**

1-SF/7715328.3

1  interest, punitive damages, costs, attorneys' fees, injunctive relief, declaratory relief, or accounting

2  based on or related to the Alleged Claims.

3      The Settlement Class Members acknowledge that all rights under California Civil Code

4  Section 1542 are hereby waived by them with respect to the Released Claims that they may have

5  against the Released Parties.  Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or
> suspect to exist in his or her favor at the time of executing the release, which if
> known by him or her must have materially affected his or her settlement with the
> debtor.

    As such, the Settlement Class Members understand and agree that they are providing the

Released Parties with a full and complete release with respect to the Released claims.

    12.2    Class Representative Individual Release

    The Class Representative agrees that the consideration set forth in this Stipulation represents

full settlement of all claims that were or could have been raised in the Lawsuit against Released

Parties by the Class Representative.  The Class Representative, on behalf of herself, and each of her

heirs, representatives, successors, assigns, and attorneys, hereby compromises, releases, resolves,

relinquishes, discharges and settles each and all of the Released Parties from any and all claims she

has or may have had against any of them arising from and relating to her employment with

Coldwater Creek, including, but not limited to the claims alleged in the Lawsuit and any claims for

severance, benefits, attorneys' fees, breach of contract, breach of the covenant of good faith and fair

dealing, violation of public policy, infliction of emotional distress, misrepresentation, fraud,

negligent retention/supervision, assault/battery, claims under Title VII of the Civil Rights Act, under

the Age Discrimination in Employment Act, under the California Fair Employment and Housing

Act, under the California Labor Code, under the California Business and Professions Code, under

the Employment Retirement Income and Security Act, under the California Constitution, and any

other statutory or common law claims relating to employment.  The Class Representative agrees that

she will not institute any such action or cause of action (in law, in equity or administratively), suits,

debts, liens, or claims, known or unknown, fixed or contingent, which she may have had or claim to

have had in state or federal court, or with any state, federal or local government agency, or with any

21

administrative or advisory body arising from or attributable to the Released Parties.

The Class Representative specifically acknowledges that she is aware of and familiar with the provisions of California Civil Code Section 1542, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Class Representative, being aware of this section, hereby expressly waives and relinquishes all rights and benefits she may have under this section as well as any other statutes or common law principles of a similar effect. Class Representative may hereafter discover facts in addition to or different from those which he now knows or believes to be true with respect to the subject matter of the Released Claims, but stipulates and agrees that, upon the Effective Date, Class Representative shall and hereby does fully, finally and forever settle and release any and all claims against Coldwater Creek, known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed upon any theory of law or equity and without regard to the subsequent discovery or existence of such different or additional facts.

Class Representative also agrees that, to the extent permitted by law, if a claim is prosecuted in her name against Released Parties before any court or administrative agency, other than the Workers' Compensation Appeals Board or EEOC, that she waives, and agrees not to take, any award of money or other damages from such proceeding. Class Representative agrees that, unless otherwise compelled by law, if a claim is prosecuted in her name against Released Parties that she will immediately request in writing that the claim on her behalf be withdrawn.

## XIII.  **MOTION FOR COURT APPROVAL**

### 13.1   Motion for Preliminary Approval

As soon as practicable, Class Representative shall file: (i) this Stipulation, including all attached exhibits; (ii) a noticed motion seeking the Court's preliminary approval of this Settlement ("Motion for Preliminary Approval"); (iii) a proposed order granting such preliminary approval and setting hearing for final approval; and (iv) and any other documents consistent with the Settlement and reasonably necessary to obtain the Court's approval of the Settlement. Class Counsel will

1  provide Coldwater with five (5) business days to review and approve the Motion for Preliminary

2  Approval and all supporting papers prior to their filing the Motion. The Parties will ask the Court to

3  maintain jurisdiction of this matter for the purpose of monitoring compliance with and performance

4  under this Stipulation and any and all orders and judgments, including the Judgment, entered by the

5  Court.

6       13.2    Motion for Final Approval

7            The Parties shall request that the Motion for Final Approval be set for hearing within 45 days

8  after the last day of the Notice Period, or as soon thereafter as the Court's calendar shall allow. Prior

9  to the Final Approval Hearing, Class Representative shall file a Motion for Final Approval,

10  Memorandum of Points and Authorities in Support of the Settlement, and her Motion(s) for

11  Attorneys' fees, Costs and Class Representative Enhancement, and any other documents consistent

12  with the Settlement and reasonably necessary to obtain the Court's approval of the Settlement. Class

13  Counsel will provide Coldwater with five (5) business days to review and approve the Motion for

14  Final Approval and all supporting paper prior to their filing the Motion with the Court.

15  **XIV.  COOPERATION**

16       14.1    The Parties shall cooperate fully with one another in seeking approval of the Court of

17  this Stipulation (including its Exhibits) and to use their respective best efforts to consummate the

18  Settlement and cause the Judgment to be entered and to become final. The Parties therefore agree to

19  cooperate in good faith to promptly prepare, execute and finalize all Settlement-related documents,

20  seek all necessary Court approvals, and do all other things necessary to consummate the Settlement.

21  All Settlement-related documents, including, but not limited to, this Stipulation (and all attached

22  exhibits), the Motion for Preliminary Approval (and any supporting papers), and the Motion for

23  Final Approval (and any supporting papers) must be acceptable in both form and content to each of

24  the Parties. In the event that the Parties are unable to reach agreement on the form or content of any

25  documents needed to implement the Settlement, or on any supplemental provisions that may become

26  necessary to effectuate the terms of the Settlement, the Parties agree to seek the assistance of the

27  Court. The Parties further agree that all such documents, supplemental provisions, and assistance of

28

1-SF/7715328.3

1     the Court shall be consistent with this Stipulation.  The Parties also agree to mutually seek to stay

2     any pending or subsequently-filed class action lawsuits that alleges any of the Released Claims set

3     forth in Section 12.1 of this Stipulation.

4          14.2     No Party to this Stipulation shall seek to evade his or its good faith obligations to seek

5     approval and implementation of this Settlement by virtue of any ruling, order, governmental report

6     or other development, whether in the Lawsuit, in any other litigation or otherwise that hereafter

7     might occur and might be deemed to alter the relative strengths of the Parties with respect to any

8     claims or defenses or their relative bargaining power with respect to negotiating.  The Parties and

9     their respective counsel of record deem this Settlement to be fair and reasonable and have arrived at

10    this Settlement in arms-length negotiations taking into account all relevant factors, present or

11    potential.

12    **XV.     MISCELLANEOUS PROVISIONS**

13         15.1     All of the Parties have been represented by counsel throughout all negotiations that

14    preceded the execution of this Stipulation, and this Stipulation is made with the consent and advice

15    of counsel.

16         15.2     This Stipulation may not be modified or amended, except in a writing that is signed

17    by the respective counsel of record for the Parties and approved by the Court.

18         15.3     This Stipulation and the exhibits attached hereto constitute the entire agreement

19    between the Parties concerning the subject matter hereof, and supersede and replace all prior

20    negotiations, understandings, memoranda of understanding and proposed agreements, written and

21    oral, relating thereto.  No extrinsic oral or written representations or terms shall modify, vary or

22    contradict the terms of the Stipulation unless made in writing and signed by duly authorized

23    representatives of all Parties and approved in writing by a final order of the Court.  No waiver of any

24    term, provision or condition of this Agreement, whether by conduct or otherwise, in any one or more

25    instance shall be deemed to be or construed as a further or continuing waiver of any such term,

26    provision or condition.

27

28

**STIPULATION OF CLASS ACTION SETTLEMENT**

1-SF/7715328.3

1    15.4    This Stipulation shall be subject to, governed by, construed, enforced, and

2  administered in accordance with the laws of the State of California, without giving effect to the

3  principles of conflict of laws, both in its procedural and substantive aspects, and shall be subject to

4  the continuing jurisdiction of the Court. This Stipulation shall be construed as a whole according to

5  its fair meaning and intent, and not strictly for or against any party, regardless of who drafted (or was

6  principally responsible for drafting) this Stipulation or any specific term or condition thereof.

7    15.5    This Stipulation may be executed in one or more counterparts, each of which shall be

8  deemed an original and together shall constitute one and the same instrument. When each of the

9  Parties has signed at least one such counterpart, this Stipulation shall become effective and binding

10  as to all of the Parties as of the day and year last written. Fax and/or electronically scanned

11  signatures shall be deemed as effective as originals.

12    15.6    The Settlement shall be binding upon and inure to the benefit of the settling parties'

13  respective successors, assigns, heirs, spouses, marital communities, executors, administrators and

14  legal representatives. The Stipulation and Settlement are not designed to and do not create any third-

15  party beneficiaries either express or implied.

16    15.7    Each individual signing this Stipulation warrants that he and/or she has the authority

17  and is expressly authorized to enter into this Stipulation on behalf of the party for which that

18  individual signs.

19    15.8    The Parties and their counsel agree that they will not issue any press releases or

20  initiate any contact with the media concerning this Stipulation or the resolution of the Lawsuit. If

21  the Parties and/or their counsel are contacted by the media, they may inform the media that the

22  Lawsuit has been amicably resolved, and refer them to the public filings in the Litigation. The Class

23  Representative and Class Counsel agree that they will not disclose the terms of the Settlement on any

24  websites or in any other materials not necessary for the facilitation of the Settlement.

25    In addition, the Parties agree that any communication about the Settlement to Class Members

26  prior to the mailing of the Court-approved Notice will be limited to a statement that settlement has

27  been reached and the details will be communicated in a forthcoming Court-approved Notice. The

28

**STIPULATION OF CLASS ACTION SETTLEMENT**

1-SF/7715328.3

1   Class Representative agrees that she will refrain from discussing the terms or the fact of this

2   Settlement with any third parties other than (1) her immediate family members and (2) her

3   accountants or attorneys, as necessary.

4

5       IN WITNESS WHEREOF, each of the undersigned has agreed to and accepted the foregoing

6   terms and conditions by executing this Stipulation as of the date indicated below.

7

8   Dated:  June 23, 2008                    THE CARTER LAW FIRM

9

10                                           By _____
                                                Roger R. Carter
11                                              Attorneys For Plaintiff
                                                BRITTANY KEENE

12  Dated: June ___, 2008                    MORGAN, LEWIS & BOCKIUS LLP

13

14                                           By _____
                                                Eric Meckley
15                                              Shannon Nakabayashi
                                                Attorneys for Defendant
16                                              COLDWATER CREEK, INC.

17

18  Dated:  June ___, 2008                   _____
                                             BRITTANY KEENE
19

20

21  Dated:  June ___, 2008                   _____
                                             Jeffrey A. Parisian, on behalf of
22                                           COLDWATER CREEK, INC.

23

24

25

26

27

28

                                    26
            STIPULATION OF CLASS ACTION SETTLEMENT

1-SF/7715328.3

1    Class Representative agrees that she will refrain from discussing the terms or the fact of this

2    Settlement with any third parties other than (1) her immediate family members and (2) her

3    accountants or attorneys, as necessary.

4

5        IN WITNESS WHEREOF, each of the undersigned has agreed to and accepted the foregoing

6    terms and conditions by executing this Stipulation as of the date indicated below.

7

8    Dated: June ___, 2008        THE CARTER LAW FIRM

9

10                            By _____
                                Roger R. Carter
11                              Attorneys For Plaintiff
                                BRITTANY KEENE

12   Dated: June ___, 2008        MORGAN, LEWIS & BOCKIUS LLP

13

14                            By _____
                                Eric Meckley
15                              Shannon Nakabayashi
                                Attorneys for Defendant
16                              COLDWATER CREEK, INC.

17

18   Dated: June 22, 2008        _____
                                BRITTANY KEENE
19

20

21   Dated: June ___, 2008

22                              _____
                                Jeffrey A. Parisian, on behalf of
                                COLDWATER CREEK, INC.
23

24

25

26

27

28

                            26

1-SF/7715328.3

1   Class Representative agrees that she will refrain from discussing the terms or the fact of this

2   Settlement with any third parties other than (1) her immediate family members and (2) her

3   accountants or attorneys, as necessary.

4

5       IN WITNESS WHEREOF, each of the undersigned has agreed to and accepted the foregoing

6   terms and conditions by executing this Stipulation as of the date indicated below.

7

8   Dated: June ___, 2008

9                                           THE CARTER LAW FIRM, P.C.

10                                          By _____
                                               Roger R. Carter
11                                             Attorneys For Plaintiff
                                               BRITTANY KEENE
12  Dated: June ___, 2008

13                                          MORGAN, LEWIS & BOCKIUS LLP

14                                          By _____
                                               Eric Meckley
15                                             Shannon Nakabayashi
                                               Attorneys for Defendant
16                                             COLDWATER CREEK, INC.

17

18  Dated: June ___, 2008

19                                          BRITTANY KEENE
                                            _____

20

21  Dated: June 23, 2008

22                                          _____
                                            Jeffrey A. Parisian, on behalf of
23                                          COLDWATER CREEK, INC.

24

25

26

27

28

                                    26
                    STIPULATION OF CLASS ACTION SETTLEMENT

1-SF/7715328.3

# EXHIBIT B

# PLEASE READ THIS NOTICE CAREFULLY.

<u>UNITED STATES DISTRICT COURT</u>
<u>NORTHERN DISTRICT OF CALIFORNIA</u>

| | |
|---|---|
| BRITTANY KEENE,<br>on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>COLDWATER CREEK, INC, a Delaware<br>Corporation; and DOES 1 through 100,<br>inclusive,<br><br>        Defendants. | CASE NO. 07-CV-05324 WHA<br>[Hon. William H. Alsup]<br><br>**NOTICE OF PENDENCY OF CLASS<br>ACTION, PROPOSED SETTLEMENT<br>AND HEARING DATE FOR COURT<br>APPROVAL** |

## <u>ATTENTION CURRENT AND FORMER CALIFORNIA EMPLOYEES OF COLDWATER CREEK, INC.:</u>

THIS NOTICE EXPLAINS YOUR POTENTIAL RIGHT TO RECOVER MONEY AS THE RESULT OF A SETTLEMENT OF A CLASS ACTION LAWSUIT AGAINST COLDWATER CREEK, INC. AND ALSO EXPLAINS HOW, IF YOU ARE ELIGIBLE, TO CLAIM A SHARE OF THE SETTLEMENT PROCEEDS.

ACCORDING TO COLDWATER CREEK'S RECORDS, YOU ARE A MEMBER OF THE CLASS ELIGIBLE TO PARTICIPATE IN THE SETTLEMENT. HOWEVER, TO RECEIVE A SETTLEMENT PAYMENT, YOU MUST FILL OUT AND RETURN THE ENCLOSED PROOF OF CLAIM FORM SO THAT IT IS POSTMARKED NO LATER THAN _____, 2008.

IF YOU DO NOT COMPLETE AND RETURN YOUR CLAIM FORM BY THIS DEADLINE, YOU WILL NOT RECEIVE ANY MONEY UNDER THE SETTLEMENT, BUT YOU WILL STILL BE BOUND BY THE TERMS OF THE SETTLEMENT UNLESS YOU COMPLETE AND RETURN AN OPT-OUT FORM.

DB2/20804619.1

*What is this case about?*

The purpose of this Notice is to inform you that your rights may be affected by the proceedings in a class action lawsuit pending before Judge William H. Alsup of the United States District Court for the Northern District of California (the "Court").  This Notice is given by Order of the Court.

There is a class action lawsuit now pending before the Court, brought on behalf of **all persons who worked for Coldwater Creek, Inc. in California between September 6, 2003 and _____ 2008, in any non-exempt position** ("Class Members").  Plaintiff Brittany Keene has alleged that Coldwater Creek, Inc. violated California Labor Code Sections 201, 202, 203, 218, 218.6, 221, 227, 227.6, 351, 510, 512, 1174, 1194, 1198 & 1199 and Industrial Welfare Commission Wage Order 7-2001, by allegedly failing to provide lawful duty free rest periods and meal periods or pay compensation in lieu thereof, failing to pay wages (including overtime and for off-the-clock work), failing to comply with itemized employee wage statement provisions, and violated the unfair competition provisions of California Business & Professions Code Section 17200, *et. seq.*  Plaintiff also seeks penalties under the Private Attorneys' General Act of 2004, California Labor Code Section 2698, *et. seq.*

There was a hearing on _____ in the United States District Court for the Northern District of California.  Judge William H. Alsup conditionally certified a class action against Coldwater Creek, Inc. and directed that you receive this notice.

*What are the terms of the Settlement?*

Coldwater Creek does not admit engaging in any unlawful conduct as alleged in this lawsuit.  Coldwater Creek denies that it owes money related to rest and meal breaks, unpaid wages, wage statements and related claims.  The Company is settling the matter as a compromise.  Coldwater Creek reserves the right to object to any claim if for any reason the settlement fails.  The Court file has the settlement documents with more information on the lawsuit.

The parties reached a settlement in the amount of Nine Hundred and Fifty Thousand Dollars ($950,000).  Defendant's total maximum liability, inclusive of all interests, costs, service payments, administration and attorneys' fees, will thus not exceed $950,000.  Defendant also will pay, in addition to this amount, the employer's share of payroll taxes arising from actual Settlement Awards paid to Qualified Claimants.  If eligible, members of the Settlement Class may participate in the settlement.  Class Members will not pay any out-of-pocket costs.

Additional Payments

The Court has preliminarily approved the following amounts to be funded from the total settlement amount:

     1.    Fee and Expense Award for Class Counsel:  Class Counsel will request fees in the amount of up to $285,000, which represents thirty percent (30%) of the maximum payout.  In addition, Class Counsel will request an Expense Award in the amount of up to $15,000.  The Court will not determine the amount of fees or expenses until the Final Approval Hearing.  The Fee and Expense Award shall compensate Class Counsel for the work they have performed in this Action and for their actual expenses incurred in connection with the Action.  Class Members are not personally responsible for any of Class Counsel's attorneys' fees or expenses.

     2.    Service Payment to Class Representative: Class counsel will also seek an enhanced recovery of no more than $7,500 for Brittany Keene for acting as representative plaintiff on behalf of the Settlement Class.  This will be in addition to whatever payment she is otherwise entitled to as a class member.  If approved by the

DB2/20804619.1

Court, this amount will be paid from the total settlement amount for her risk and service on behalf of the Settlement Class which included, among other things, reviewing documents, submitting to a deposition, attending strategy sessions and meetings with Class Counsel, and performing other services of that nature.

      3.    <u>Settlement Administration Costs</u>:  Settlement Administration Costs in an amount not to exceed $50,000 to the Settlement Administrator, _____, for their services, including but not limited to distributing Class Notices and Claim Forms to Class Members, processing Claim Forms, calculating Settlement Awards for Qualified Claimants, and distributing Settlement Awards to Qualified Claimants.

      4.    <u>PAGA Penalties</u>: – Coldwater Creek shall pay Thirty Thousand Dollars ($30,000.00) for settlement of any and all claims for which penalties under the Private Attorney General's Act ("PAGA"), Labor Code Section 2698 *et seq.*, may be sought or are otherwise available.  The PAGA payment shall be allocated as follows: $22,500 (75%) to the California Labor & Workforce Development Agency ("LWDA"), and $7,500 (25%) to the Participating Claimants on a pro rata basis.

All of the foregoing payments are subject to final approval from the Court.

<u>Release of Claims</u>

Upon final approval of the Settlement, each Class Member who does not request exclusion from the settlement is deemed to fully release and discharge Coldwater Creek, Inc. and its present and former parent companies, subsidiaries, related or affiliated companies, shareholders, officers, directors, employees, agents, attorneys, insurers, successors and assigns, and any individual or entity which could be jointly liable with Defendant ("Released Parties"), for claims or causes of action that are based on or reasonably relate to the Alleged Claims in the Complaint, as defined in Section 1.1 of the parties' Stipulation of Settlement, *i.e.*, violations of California Labor Code Sections 201, 202, 203, 218, 218.6, 221, 227, 227.6, 351, 510, 512, 1174, 1194, 1198 & 1199 and Industrial Welfare Commission Wage Order 7-2001, based upon Defendant's alleged nonpayment of compensation for meal or rest period violations, nonpayment of wages, including claims for overtime wages and "off-the-clock" work, failure to pay all wages due at termination based on these alleged violations, inaccurate wage statements based on these alleged violations, unfair or unlawful business practices based on these alleged violations (including under Business & Professions Code Sections 17200 *et. seq.*), penalties under PAGA (Labor Code §2698, *et seq.*) based on these alleged violations and any related premiums, penalties, interest, punitive damages, costs, attorneys' fees, injunctive relief, declaratory relief, or accounting ("Released Claims").  Each Class Member will also waive all rights under California Civil Code Section 1542 with respect to any Released Claims that he or she may have against the Released Parties.  Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

As such, the Settlement Class Members understand and agree that they are providing the Released Parties with a full and complete release of any and all Released Claims, known or unknown which they may have against the Released Parties.

The Released Claims do <u>not</u> include a release of *all* your rights you have as an employee or former employee of Coldwater Creek.  The Released Claims are specifically limited to the claims set forth above.  Claims not listed are NOT part of this lawsuit and settlement.

DB2/20804619.1

***If I make a claim, how is my share of the Settlement calculated?***

Each Participating Claimant shall receive a Settlement Payment, which is a share of the Net Settlement Consideration or payment (Net Settlement Consideration is calculated by deducting Attorneys' Fees, Litigation Expenses, Claims Administration Costs, any Enhancement to the Class Representative, and the PAGA Penalty Payment from the Maximum Settlement Consideration). The payment for each Participating Claimant is based on the number of Compensable Shifts worked by that person during the Class Period. A "Compensable Shift" is defined as any shift an employee worked for Coldwater Creek as a non-exempt employee in California between September 6, 2003 and _____, 2008.

The Settlement Payment for each individual Participating Claimant shall be calculated by dividing the Net Settlement Consideration by the total number of shifts worked by all Class Members during the Class Period, and then multiplying that number by the total number of Compensable Shifts worked by the individual Class Member. By way of example only, if the total number of Compensable Shifts worked by all Class Members combined is 400,000 and if the Net Settlement Consideration is $600,000 and if the individual Participating Claimant worked 260 Compensable Shifts (i.e., an employee working 5 days per week for approximately one year (or 5 x 52)), the Participating Claimant would receive:  $390.00 [i.e., 600,000 divided by 400,000 = $1.50, multiplied by 260).

In addition, each Participating Claimant shall receive his or her pro rata share of the $7,500 portion of the PAGA Penalty Payment to be distributed to Participating Claimants.

The attached Proof of Claim Form lists the number of Compensable Shifts that you worked during the Claims Period. If you believe that the number of Compensable Shifts listed on the Claim Form is incorrect, you must send a letter to the Claims Administrator on or before the deadline to file a claim along with the Claim Form indicating what you believe to be the correct number of qualifying shifts. You must also send any documents or other information that support your belief. The Claims Administrator will resolve any dispute regarding the number of Compensable Shifts you worked based on Coldwater Creek's records and any information that you provide.

For purposes of tax payment obligations, all of the amounts distributed to each Settlement Class member shall be treated as 50% interest and other compensation (and each Participating Claimant will be issued an IRS Form 1099 for such payment to him or her) and 50% wages and reported as such (and each Participating Claimant will be issued an IRS Form W-2 for such payment to him or her). Settlement Class members should consult with their tax advisors concerning the tax consequences of the payments that they receive under the settlement.

***What are my rights and options as a Class Member?***

You have four options under this Settlement, each of which is discussed below. You may (A) claim your share of the settlement money, (B) exclude yourself from the Settlement, (C) object to the Settlement or (D) do nothing

(A)    IF YOU WANT TO CLAIM YOUR SHARE OF THE SETTLEMENT MONEY: In order to receive money from the settlement, you must submit a claim by filling out the enclosed Claim Form, and it must be postmarked no later than _____. By executing the Claim Form, you are consenting to the terms of the Settlement. Defendant will not retaliate against any person who participates in this Settlement.

To be eligible for a Settlement Award, you must submit your Claim Form, postmarked by _____, to the Settlement Administrator:

**Questions? Call 1-800-_____ toll-free**

DB2/20804619.1

[address]

Claim Forms postmarked after _____ will be denied

(B) IF YOU WANT TO BE EXCLUDED FROM THE SETTLEMENT: If you do not wish to take part in the settlement you must complete the Opt-Out form. You need to complete the Opt-Out Form and promptly mail it to the Settlement Administrator. If you chose to opt out of the settlement you will not receive money from the settlement.

The judgment will bind all class members who do not request exclusion. Any member who does not request exclusion may, if they wish, enter an appearance through his or her own lawyer at their own expense.

(C) IF YOU WANT TO OBJECT TO THE SETTLEMENT: You may object, personally or through an attorney, to the proposed settlement by mailing your objection to the Clerk of the Court of the United States District Court for the Northern District of California, Judge William H. Alsup, Case No. 07 CV 05324 WHA, and counsel and appearing at the fairness hearing. You must file with the Clerk of the Court of the United States District Court for Northern District of California a written notice of your desire to appear at the fairness hearing, briefly indicating the nature of your comments or objection. Such notice must be filed with the Court no later than ____ [insert date 45 days from the date Notice mailed]_____, 2008, and a copy of it must be sent the same date to:

Attorneys for the Plaintiff, Brittany Keene:
Scott B. Cooper, Esq.
The Cooper Law Firm, P.C.
2030 Main Street, Suite 1300
Irvine, CA 92614
Phone: 949-724-9200

Attorneys for Coldwater Creek, Inc.:
Eric Meckley, Esq.
MORGAN, LEWIS & BOCKIUS, LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: 415.442.1000

If you do not comply with this procedure, you may not be entitled to be heard at the fairness hearing or to otherwise contest the approval of the settlement, or to appeal from any related orders or judgments of the Court.

(D)     IF YOU CHOOSE TO DO NOTHING: If you do nothing, and the Court approves the Settlement, you will be bound by the terms of the Settlement and the release, but you will not receive any money under the Settlement

*When and where is the final approval hearing?*

The Court will conduct a final approval hearing on _____, 2008 in Department 9 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco. At that hearing, the Court will determine whether the Settlement should be finally approved as fair, reasonable, and adequate. The Court also will be asked to approve Class Counsel's request for attorney's fees and costs, and the enhancement awards to be paid to the Class Representatives. Unless you have timely filed an objection to the settlement, IT IS NOT NECESSARY FOR YOU TO APPEAR AT THE HEARING.

*What if I need more information?*

If you have any questions, call 1-800-_____ toll free. Ask about the Coldwater Creek Class Settlement.

Coldwater Creek, Inc. Claims Administration
c/o _____ ____, _____, _____

# PLEASE DO NOT CONTACT THE CLERK OF THE COURT OR THE JUDGE WITH INQUIRIES ABOUT THE SETTLEMENT

**Questions? Call 1-800-_____ toll-free**

DB2/20804619.1

# EXHIBIT C

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**BRITTANY KEENE v. COLDWATER CREEK, INC.,**
Case No. 07 CV 05324 WHA removed from Alameda County Superior Court, Case No. RG07344777

### CLAIM FORM

**IN ORDER TO BE ELIGIBLE TO RECEIVE MONEY FROM THE CLASS ACTION SETTLEMENT , YOU MUST COMPLETE, SIGN, POSTMARK, AND MAIL THIS CLAIM FORM ON OR BEFORE_____, 2008, ADDRESSED AS FOLLOWS:**

```
_____
_____
    Phone: _____
```

**INCOMPLETE AND/OR UNTIMELY CLAIM FORMS WILL BE REJECTED**

**I.    INSTRUCTIONS:**

1.    Please complete this form only if you wish to participate in the settlement. Do not complete this form if you wish to exclude yourself from the settlement.

2.    To be eligible for this settlement and for a monetary recovery, you must have worked for Coldwater Creek, Inc. in California as a non-exempt employee between September 6, 2003 and _____, 2008.

3.    Your completed Claim Form must be postmarked on or before _____, 2008 or it will be rejected. Your Claim Form must be filled out completely, or it will be rejected. If you move, please send the Claims Administrator your new address. It is your responsibility to keep a current address on file with the Claims Administrator.

**II.    PERSONAL INFORMATION**

Please legibly print the following information:

Name (first, middle and last):_____

Home Street Address: _____

City, State, Zip Code: _____

Home Telephone Number: ( ___ ___ ___ ) ___ ___ ___ – ___ ___ ___ ___

Last Four Digits of Social Security Number: XXX – XX – ___ ___ ___ ___

**III.    YOUR COMPENSABLE SHIFTS WORKED**

According to Coldwater Creek's records, you worked the following number of "Compensable Shifts" between September 6, 2003 and _____, 2008 .

### Individual Compensable Shifts

```
_____
```

A "Compensable Shift" is defined as any shift you worked for Coldwater Creek as a non-exempt employee in California between September 6, 2003 and _____, 2008.

<u>Please be advised that the number of Compensable Shifts above is presumed to be correct unless you submit documents proving otherwise.</u> If you disagree with the number of Compensable Shifts above, please explain why below and submit with this Claim Form any documents supporting your position. Please also state the total number of Compensable Shifts you believe you worked between September 6, 2003 and _____, 2008 :

_____

_____

_____

In the event of a dispute about the correct number of Compensable Shifts, the Claims Administrator will resolve the challenge and make a final and binding determination without hearing or right of appeal.

## IV.    RELEASE OF CLAIMS

**My signature below constitutes a release by me of Defendant Coldwater Creek, Inc., and its present and former parent companies, subsidiaries, related or affiliated companies, shareholders, officers, directors, employees, agents, attorneys, insurers, successors and assigns, and any individual or entity which could be jointly liable with Defendant ("Released Parties"), for claims or causes of action that are based on or reasonably relate to the Alleged Claims in the Complaint, as defined in Section 1.1 of the parties' Stipulation of Settlement, *i.e.*, violations of California Labor Code Sections 201, 202, 203, 218, 218.6, 221, 227, 227.6, 351, 510, 512, 1174, 1194, 1198 & 1199 and Industrial Welfare Commission Wage Order 7-2001, based upon Defendant's alleged nonpayment of compensation for meal or rest period violations, nonpayment of wages, including claims for overtime wages and "off-the-clock" work, failure to pay all wages due at termination based on these alleged violations, inaccurate wage statements based on these alleged violations, unfair or unlawful business practices based on these alleged violations (including under Business & Professions Code Sections 17200 *et. seq.*), penalties under PAGA (Labor Code §2698, *et seq.*) based on these alleged violations and any related premiums, penalties, interest, punitive damages, costs, attorneys' fees, injunctive relief, declaratory relief, or accounting ("Released Claims"). I acknowledge that all rights under California Civil Code Section 1542 are hereby waived by me with respect to any Released Claims that I may have against the Released Parties. Section 1542 provides:**

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and executed on the date set forth below.

X_____                    _____
   (Signature)                                                                    Date


_____
   (Print name)

# EXHIBIT D

**BRITTANY KEENE v. COLDWATER CREEK, INC.,**

Case No. 07 CV 05324 WHA removed from Alameda County Superior Court, Case No.
RG07344777

**REQUEST FOR EXCLUSION FROM CLASS ACTION SETTLEMENT**

INCOMPLETE AND/OR UNTIMELY FORMS WILL BE REJECTED

**YOU MUST <u>COMPLETE</u>, <u>SIGN</u> AND <u>MAIL</u> THIS REQUEST FOR EXCLUSION
FORM POSTMARKED ON OR BEFORE _____, 2008, ADDRESSED AS FOLLOWS,
IN ORDER TO BE EXCLUDED FROM THE CLASS ACTION SETTLEMENT.**

Coldwater Creek Claims Administrator

c/o _____

_____

_____

Phone: 1-800-_____

## I.  <u>INSTRUCTIONS</u>

You must complete, sign and mail this Request for Opt-Out/Exclusion Form in order to opt-out of the Class
Action settlement. Your Request for Exclusion Form must be postmarked on or before the date above, or it
will be rejected. Your Request for Exclusion Form must be filled out completely, or it will be rejected.
If you move, please send the Claims Administrator your new address. It is your responsibility to keep a
current address on file with the Claims Administrator.

## II.  <u>REQUEST TO BE EXCLUDED FROM THE SETTLEMENT:</u>

I have received the Notice of Proposed Class Action Settlement and Final Fairness and Approval Hearing. I
confirm that I am/was employed by Coldwater Creek, Inc. as a non-exempt employee in California between
September 6, 2003 and _____, 2008. I have carefully considered the information contained in the
Notice. I want to be excluded from the Settlement Class, and I have decided not to participate in the Proposed
Settlement. I understand that by submitting this Request for Exclusion Form, I will no longer be a Class
Member in the Settlement Class and that I will be barred from receiving any portion of the Settlement. I
further understand that by opting-out of the Settlement I may pursue any claims I may have against the
company listed above at my own expense. I understand that I have been advised in writing to seek the advice
of counsel regarding the applicable statute of limitations. **I understand that by submitting this Exclusion
Form, I will be forever barred from receiving any money under the Settlement.**

**I declare under penalty of perjury under the laws of the State of California and the United States that
the foregoing is true and correct.**

X_____          _____
(Sign your name here)                                      Date

_____          _____
Print Name (first, middle and last)                    Former Names (if any)

(___)_____          XXX – XXX – __ __ __ __
Daytime Telephone Number                        Last Four Digits of Social Security Number